Shilling and Wife *vs.* Carson, by her next friend, Cook.

(Decided 12th June, 1867.)

---

HENRY SHILLING AND WIFE *vs.* ALICE C. B. CARSON, by her next friend, G. P. COOK.

*Evidence in actions of Slander—Pleading—Evidence.*

As in actions of slander, the plaintiff is permitted to prove the malicious intent, in order to aggravate the damages, so the defendant, to repel it, may show grounds of suspicion of the truth of the charge by facts and circumstances; not in bar of the action, but in mitigation of damages.

Shilling and Wife *vs.* Carson, by her next friend, Cook.

Where general character is the subject of defamation the defendant is not entitled, for the purpose of diminishing the damages, to offer evidence of particular instances of misconduct, because the plaintiff is required to be prepared only to maintain his general reputation; but if the subject matter of the suit be the reputation of a woman for chastity, she must be expected to be ready to vindicate her character in that particular in which it is impugned. General reputation for a want of chastity is admissible in mitigation of damages.

The admission of evidence in mitigation of damages, being either to show the absence of malice or the want of reputation, whatever circumstance tends to prove the one or the other, is within the reason of the rule.

Whether the defendant will be permitted under the general issue to prove general suspicions and common reports of the guilt of the plaintiff in mitigation of damages, is not universally agreed. But where the evidence goes to prove that the defendant did not act wantonly and under the influence of actual malice, or is offered solely to show the real character and degree of the malice which the law implies from the falsity of the charge, all intention of proving the truth being expressly disclaimed, it may be admitted and of course be considered by the jury.

Under the system of pleading sanctioned by the Code, no inducement, setting forth the previous reputation of the plaintiff, is necessary in an action of slander. Every woman is presumed to be chaste and every man honest, until the contrary is shown. It being necessarily implied, the rule of evidence in mitigation of damages must be the same as if such inducement were averred.

Testimony collateral to the issue, is inadmissible.

APPEAL from the Circuit Court for Washington County.

This was an action on the case, brought by the appellee, in October, 1863, against the appellants, for slanderous words uttered by the appellant Harriet. The jury assessed the damages at $1,000, and the defendants appealed to this Court.

The cause was argued before BOWIE, C. J., BARTOL and GOLDSBOROUGH, J.

*William T. Hamilton* and *Andrew K. Syester*, for the appellants:

Was the question, the objection to allow which to be

answered, constituted the defendants' first exception, proper to be propounded and answered ?

In this State it is settled, that under the plea of *non cul.*, the defendant can give in evidence facts and circumstances showing grounds of suspicion of the truth of the charge, in mitigation of damages; he can show that he uttered the words upon probable grounds of suspicion. The jury is vested with the discretion to assess nominal or aggravated damages, according to the *circumstances of the particular case*, and the damages are as well punitive as compensatory. *Rigden vs. Wolcott*, 6 *G. & J.*, 416; *Wagner vs. Holbrunner*, 7 *Gill*, 296.

Being punitive, the *quo animo* is material either in diminishing or aggravating damages; or being compensatory, the character of the plaintiff is directly involved in the consideration of damages; for by showing it to be good or bad, measurable justice may be attained in assessing its value. Therefore, with all possible diversity upon other branches in cases of slander, it is considered law both in England and in this country, that general evidence of the character of the plaintiff, can be given by the defendant to mitigate damages upon the question, especially of compensation, and as also reflecting upon the *quo animo*, and thereby affecting the question of punishment. But, upon the question, whether rumors and reports can be given in evidence, there is great diversity of opinion, and different rulings have obtained in different States; and not directly decided in this State. In England they are admitted. 2 *Starkie on Slander*, 77 *(top paging) and note* 84, *(top paging;) Leicester vs. Walter*, 2 *Camp.*, 251; 2 *Greenl. on Evidence, sec.* 275, *and note* 2; —— *vs. Moor*, 1 *M. & S.*, 284; *Hyde vs. Bailey*, 3 *Conn.*, 466; *Kennedy vs. Gregory*, 1 *Binney*, 85.

Connecticut, Pennsylvania, Kentucky and South Carolina have followed the English rule. Massachusetts, New York and Virginia have not. In New York it was in

doubt for a time whether you could introduce evidence of general character. *Foot vs. Tracy*, 1 *Johns. Rep.*, 46.

We maintain that the decisions in the cases decided by this Court, and before cited, conform to the spirit of the English decisions; and though the facts in them did not involve the particular question now before the Court, the reasoning of the Court come fully up to the doctrine now urged, and to the humanity and the justice of the cause. It is founded upon a safe and cautious principle, and will in the end secure a better administration of public justice.

Let us observe that the main principle involved in proof of general character is the *quantum* of compensation. The *quo animo* involves more specially the principle of punishment. Upon the question of *quo animo* there appears to us no difficulty upon principle, as well as upon authority, in sustaining the correctness of our position; and at all events we believe it is the proper rule in attaining justice.

In the aspect presented, this evidence offered to be introduced, may be considered something in degree less than general character, and yet a strong and potent circumstance mitigating or explaining the malice presumed by law and thus diminishing damages.

The case now before the Court is an illustration. Without the testimony offered, the appellee appears before the jury an innocent, unsuspected and injured girl, and that without the least cause or suspicion, or ground of suspicion, the appellant Harriet, in the most wanton manner, traduced her character. There was left no palliating or excusable circumstance to alleviate or mollify the helpless condition of the appellant, or soften the resentments of the jury. In England it is a bar to the action to give the names of persons from whom it was heard when detailing the slander. It appears then to us that the question, the object of which was the ascertain-

ment of the degree of malice with which the words were uttered, was proper. 2 *Greenleaf on Evidence, sec.* 275.

The aforegoing has reference alone to so much of the question as relates to character. The other branches of it are comprehended in the first, and tend to show how extensive and prevailing these reports and rumors were.

And again, the witness, as the mother of the appellee, had an interest in knowing, and the right to enquire respecting the charges or reports against her daughter. In acting upon this interest and right, she must take with it all attending responsibilities and consequences, and was therefore liable to be examined in reference to the whole subject matter; and besides, upon cross-examination, as in this case, where there is great latitude, and where these interests, rights and relations exist, we had the right to examine her touching her own conduct in the transaction, testing her accuracy, her feelings, her conduct, how she derived the information upon which she acted in this case, and how otherwise she acted in reference to like reports. The propriety of this is seen in the fact that she is solely the responsible party for this whole cause of action.

We consider the evidence, the rejection of which constituted the appellants' second exception, admissible to show the condition of the appellant Harriet's mind at the time of uttering the words. Conscious that her daughter was innocent of this charge alleged against her by the mother of the appellee, she naturally became excited and enraged, for this charge against her was as grave as the words she afterwards uttered; and imputing the utterance of such a gross and vulgar word, with all its meaning, to a young, refined and respectable girl, was as shocking to a sensitive mind as being charged with the word itself. Therefore, we desire to prove that when the appellant Harriet, in her excited condition, uttered the words charged, she was conscious of her daughter's innocence,

and that when she alleged that her daughter used no such word, she spoke truly, and that there was no pretence or falsification upon her part, and no simulation of anger or unjust indignation when uttering the words.

This involves the question of provocation, and is to ascertain the degree of malice in mitigation or aggravation of damages, whether the words were uttered deliberately and with malice aforethought, or in passion or anger, caused by the conduct of the party having an interest or right to inquire into the matter. The mother of the appellee had the right to know and inquire respecting this charge against her daughter. *Robinett vs. Ruby,* 13 *Md. Rep.,* 95.

But in doing it she was bound to observe the proprieties of life, and she stood in the same relation to the appellants as her daughter would herself, had she acted instead of her mother.

This question of provocation is well settled in this State; words uttered under provocation are less culpable in the eye of the law and of morals, than when uttered from a fiendish dislike. *Botelar vs. Bell,* 1 *Md. Rep.,* 173.

Wherefore to put the appellants in a proper condition before the jury, they should have been allowed to show the falsity of the charge against their daughter, so that the extent of anger, and therefore of responsibility from the consciousness of its falsity, might be measured in comparing it with a simple denial at the time, and without knowing whether it was true or false, and in respect to which the mother of the appellee asserted it to be true, and the appellant Harriet denied it.

*R. H. Alvey,* for the appellee.

There is not a single member of the compound question proposed to be asked the witness, and the rejection of which constituted the first exception of the appellants,

that is allowable under any established rule of law, much less the whole congeries of propositions embraced by it.

1. As to rumors and reports touching the character of the plaintiff for chastity.

While the defendant, in these actions, to mitigate the damages, "may give evidence of such *facts and circumstances* as show a ground of suspicion," (6 *Gill & John.*, 417,) he will not be allowed to resort to mere rumors and reports, which he h mself may have, for aught that appears, put into circulation, or given currency to, for unworthy purposes, knowing them at the time to be groundless. The plaintiff's general character she was bound to be prepared to defend, but private and particular scandal she could not be expected to meet. *Walcott vs. Hall,* 6 *Mass.,* 514, 518; *Matson vs. Buck,* 5 *Cow.,* 499; *Alderman vs. French,* 1 *Pick,* 1, 18; *Bodwell vs. Swan and Wife,* 3 *Pick.,* 376; *Root vs. King & Verplanck,* 7 *Cowen,* 613; *Gilman vs. Lowell,* 8 *Wend.,* 573; *Ridley vs. Perry.* 16 *Maine,* 21.

Such evidence is admissible upon no principle, either legal or moral; and law, both human and divine, condemns it as altogether unworthy to be made the ground of our opinions or actions. The question proposed to be asked of the witness had no reference *to any particular time* when these rumors and reports prevailed—whether five or ten years previous to the time of the slander complained of. Assuming that there was originally ground for such reports, is time never allowed to cast its protecting veil over the errors of the penitent?

2. That part of the question by which it was proposed to ask the witness, whether *she* had not spoken to *others* and complained to them, and had frequent misunderstandings before that time with others on the same subject, was entirely irrelevant and wholly inadmissible. What the witness may have said, or what she may have said or done in connection with others, if not in contradiction

of what she had previously stated, could have nothing to do with the issue on trial. It was not proposed to connect the plaintiff with it, and the right of cross-examination extended to no such inquiries. *Goodhand vs. Benton*, 6 *Gill & John.*, 481.

3. But the compound question proposed must be adjudged of in its entirety, and if any member, or part of it, be exceptionable, the whole was properly rejected. *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 140 ; *Carroll's Lessee vs. The Granite Manuf. Co.*, 11 *Md. Rep.*, 407.

As to the appellants' second exception : Whether Miss Shilling ever did, in fact, call the plaintiff a ———, is wholly immaterial to the issue tried in this cause. The action was not for the words uttered by Miss Shilling, but slanderous words, different from those imputed to her, uttered by her mother, professedly upon her own knowledge of the facts of which she spoke. It is impossible to conceive, therefore, upon what principle the offered evidence was sought to be admitted. *It was wholly collateral.* It was offered *"further to support the issue,"* on the part of the appellants, and if it were not admissible for the purpose for which it was offered, of course it was not error in the Court below to reject it. Evidence to be admissible must be both competent and pertinent to prove the issue. *Marshall vs. Haney*, 9 *Gill*, 258.

But in this case the evidence offered was neither competent nor pertinent. It was not competent, because it was simply to disprove what was alleged to be the declaration of a third party, and which was introduced as hearsay. It was not pertinent, because it did not in any manner tend to disprove the speaking of the slanderous words imputed to the female defendant. *Anderson vs. Johnson*, 3 *H. & J.*, 162 ; *Odiorne vs. Winkley*, 2 *Gall.*, 51, 53.

If this evidence had been offered, however, to discredit,

or in any manner to impeach the evidence of Mrs. Carson, it would have been equally inadmissible:

First. Because there had not been the necessary preliminary examination of that witness, as to the specific matter, by which she could have stated her knowledge and recollection of all that transpired. *Franklin Bank of Balt. vs. Penn., Del. & Md. Steam Navigation Co.*, 11 *Gill & John.*, 28; *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 127.

Secondly. Because the appellants did not disclose to the Court that their design by the introduction of the evidence, was to impeach or discredit the witness, of which the Court ought to have been apprised. *Wolfe vs. Hauver*, 1 *Gill*, 92.

Thirdly. Because there was no contradiction in fact of any pertinent evidence given by the witness.

Fourthly. Because the witness could not be impeached or discredited in reference to any immaterial or impertinent fact, brought into the case.

It is not permitted to ask a witness any fact which fancy or idle curiosity may suggest for the purpose of disproving it by another witness; nor is it proper to ask a witness, with the same view, of a fact proper in itself to be proved in the cause, if the only knowledge of such fact has been obtained through a source which the rules of evidence do not recognize as competent. *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 127; *Anderson vs. Johnson*, 3 *H. & J.*, 162; *Odiorne vs. Winkley*, 2 *Gallison*, 51, 53.

Bowie, C. J., delivered the opinion of this Court.

The action in which this appeal is taken is a suit for defamation of character, brought by the appellee against the appellants, for malicious words spoken by Harriet, the wife. The words charged are made actionable by the Code of Pub. Genl. Laws, Art. 89, secs. 1, 2.

Issue was joined on the general plea that the defendant Harriet did not commit the wrongs as alleged in the declaration, which is equivalent to "*non cul.*" under the old forms.

At the trial, the plaintiff having given evidence to support the issue on her part by examining her mother, the defendants, on cross-examination, proposed to prove by the same witness that she had heard "rumors and reports touching the character of the plaintiff for chastity before the interview in which the defendant used the defamatory words charged, and had spoken to others, and complained to them, and had frequent misunderstandings with them on the same subject," to which the plaintiff objected, and the Court sustained the objection, which forms the ground of the first bill of exceptions on the part of the defendant.

The defendants, then, further to support the issue on their part, after proving that the witness was present at the conversation testified to by plaintiff's witnesses, in which the latter charged the daughter of the defendant with using defamatory words, and said to her, "Harriet Shilling, I want you to stop your daughter from calling my daughter a ————," proposed to call the daughter to prove she at no time, and to no person, used such language ; which being objected to by the plaintiff, and sustained by the Court, constitutes the second exception.

The record does not show for what purpose the testimony offered and excluded in the first exception of the defendant was proposed to be given, but it must be inferred from the pleadings that its was offered in mitigation of damages, as it is very well understood, according to the practice in this State, it could not have been admitted for any other purpose.

It is insisted, on the part of the appellants, that the testimony offered should have been admitted to reduce the damages, whether they are regarded as punitive or

compensatory; if the former, as showing the words spoken were not uttered maliciously, but as a common rumor ; if the latter, because they showed the general reputation of the plaintiff for chastity was before then impeached. The appellee contends that the testimony offered was properly rejected, as it virtually tended to extenuate the wrong of the defendant, by proof of its repetition, since the rumors might have originated with the defendant.

In the case of *Wagner vs. Holbrunner*, this Court announces the principle which governs the admission of evidence in mitigation of damages, in actions of slander, as follows :  " As in all actions of slander the plaintiff is permitted to prove the malicious intent, in order to aggravate the damages, so the defendant, to repel it, may show grounds of suspicion of the truth of the charge, by facts and circumstances ; not in bar of the action, but in mitigation of damages." 7 *Gill*, 300.

The defamation complained of in this case appears to have occurred at an interview between the plaintiff's mother and defendant's wife, in which the latter used the words complained of, in reply to the threat of the former, to sue the defendant's daughter.

It does not appear that the defendant *Harriet* had ever before used any defamatory words of the plaintiff. It would be a violent presumption to suppose she was the author of all the former reports which the witness had heard in the absence of such proof.

Where general character is the subject of defamation, the defendant would not be permitted to diminish the damages by evidence of particular instances of misconduct, because the plaintiff is required to be prepared only to maintain his general reputation; but if the subject matter of the suit be the reputation of a woman for *chastity* she must be expected to be ready to vindicate her character in that particualr in which it is impugned.   General

reputation for a want of chastity would certainly be admissible in mitigation of damages.

The admission of evidence in mitigation of damages being either to show the absence of malice, or the want of reputation, whatever circumstance tends to prove the one or the other, is within the reason of the rule.   As we have shown, this Court has decided that facts and circumstances may be given in evidence, under the general issue, not amounting to proof of justification, but has not defined what constitutes such facts and circumstances.

Professor Greenleaf, in his 2d vol. on Evidence, section 275, says : '' But whether the defendant will be permitted, under the general issue, to prove *general* suspicions and common reports of the guilt of the plaintiff in mitigation of damages, is not universally agreed.   It seems, however, that where the evidence goes to prove the defendant did not act wantonly and under the influence of actual malice, or is offered solely to show the real character and degree of the malice which the law implies from the falsity of the charge, all intention of proving the truth being expressly disclaimed, it may be admitted and of course be considered by the jury.''

In the case of *Walcott vs. Hall*, 6 *Mass.*, 514, 518, in which Chief Justice Parsons so eloquently denounced the attempt of the defendant to introduce reports of the guilt of the plaintiff, the defendant justified, and then sought, in mitigation of damages, (failing in proof of his plea,) to show the plaintiff had been charged with theft in particular instances.   There, it was very properly said, evidence of the plaintiff's general character was not offered, but only an attempt to blast his reputation by particular reports—such an attempt under the circumstances was evidence of continuing malice.   Where, however, the defendant denies using the defamatory words, she admits their falsehood, and the effort to show the circumstances under which they were used implies no persistence in the

charge, but recantation and apology. The evidence proposed to be offered by the defendant, on cross-examination of the plaintiff's witness, was not mere rumor or report, but the *fact*, that *before* the defamation complained of, the witness, *the plaintiff's* "*mother*, had spoken *to others* and complained *to them*, and had *frequent* misunderstandings with them on the same subject." These are circumstances to show the words were spoken under an impression of their truth, and not with any malicious intention. This testimony is closely analogous to that which was admitted or ruled to be good by Lord Ellenborough in the case of ——— *vs. Moor*, 1 *Maule & Selwyn*, 284. In that case the witness who proved the slanderous words, imputing unnatural practices to the defendant, was asked upon cross-examination whether he had not heard reports in the neighborhood that the plaintiff had been guilty of similar practices. Lord Ellenborough held the evidence admissible in mitigation of damages upon the ground that a person of disparaged fame is not entitled to the same measure of damages as one of unblemished character.

The case of *Leicester vs. Walter*, 2 *Camp.*, 251, it is said turned somewhat on the inducement of the *nar.*, which set forth that the plaintiff had always preserved a good character in society, and this was referred to by Sir James Mansfield as a reason for admitting evidence of reports ; but in summing up he said : "The jury would consider, in assessing the damages, whether the reports which had been proved were sufficient to show he could receive little injury, and in this point of view it did not matter whether the reports were well or ill founded, provided they got into many men's mouths." This is an extreme case, much to be deprecated, but illustrates the principle of the rule, showing the extent of the injury received, is to be measured by the actual standing or character of the plaintiff at the time of the defamation complained of.

Under the system of pleading sanctioned by the Code,

no inducement, setting forth the previous reputation of the plaintiff, is necessary in the action of slander. Every woman is presumed to be chaste and every man to be honest, until the contrary is shown. It being necessarily implied, the rules of evidence in mitigation of damages must be the same as if such inducement were averred. For these reasons we think the Court below erred in excluding the evidence proposed to be offered by the defendants in their first bill of exceptions.

The testimony of the daughter of the defendants, which is the subject of their second bill of exceptions, was entirely collateral to the issue, and properly excluded.

As this case will be remanded, it will be proper to express the opinion of this Court upon the correctness of the decision of the Court below upon the plaintiffs' bill of exceptions.

The ruling of the Court below was entirely proper in excluding the testimony proposed as evidence in chief, but as it appears from what has preceded, the testimony offered by the defendants in their first bill of exceptions should have been admitted; the evidence offered by the plaintiffs in their bill of exceptions would be material and competent as rebutting testimony.

*Judgment reversed*
*and procedendo awarded.*

(Decided 12th June, 1867.)