[No. 955.]

# WILLIAM THOMPSON, APPELLANT, *v.* C. C. POWNING, RESPONDENT.

LIBEL—PROPRIETORS OF NEWSPAPERS—PROCEEDINGS IN COURT—PRIVILEGED COMMUNICATIONS.—The public have a right to know what takes place in a court of justice, and unless the proceedings are of an immoral, blasphemous, or indecent character, or accompanied with defamatory observations or comments, the publication is privileged: *Held,* that the court did not err in refusing to allow plaintiff to introduce a copy of his complaint as published in defendant's newspaper.

IDEM—SUBSEQUENT PUBLICATIONS.—The defendant published in his newspaper this article: "The Reno correspondent of the Truckee Republican has the following concerning our libel suit: 'The opinion is prevalent that it is a clear clase of bulldosing and an underhanded scheme concocted by Powning's enemies to ruin him financially:'" *Held,* that it was properly excluded as evidence; that it did not come within the rule which permits subsequent publications to be introduced in evidence for the purpose of showing malice. (Beatty, C. J., dissenting.)

IDEM—PLEADINGS—ITEMS OF NEWS—WHEN NO JUSTIFICATION.—Proprietors of newspapers are not entitled, under the law, to claim any justification in publishing items of news or detailing occurring events that are libelous in their character.

IDEM—IGNORANCE OF PROPRIETORS NO EXCUSE.—Newspaper proprietors are not to be released from any liability on account of any ignorance, inadvertence, or thoughtlessness on their part, nor for matter published without their knowledge or authority.

IDEM—RIGHTS AND PRIVILEGES OF NEWSPAPER PROPRIETORS—SAME AS INDIVIDUALS.—Proprietors of newspapers are liable for what they publish in the same manner as other individuals, and are subject to the same rules, rights, and privileges.

IDEM—PLEADINGS—EVIDENCE—INTENT AND MOTIVE OF DEFENDANT—EXEMPLARY DAMAGES.—Defendant, in his answer, admitted the publication of the alleged libelous article; but averred that he was not guilty of any malice, or wrongful misconduct: *Held,* that under the pleadings he had the right to show the circumstances under which the publication

was made, and to introduce any evidence which tended to throw any light upon his intent and motive, not in mitigation of the actual damages sustained by plaintiff, but as tending to repel malice and to mitigate exemplary damages.

ACTION FOR LIBEL—WHAT MUST BE SHOWN. —In order to maintain this species of action, it is necessary that there should be malice in the defendant and an injury to the plaintiff, and that the words of the article should be untrue.

IDEM—PRESUMPTION OF MALICE.—The law always presumes that in the publication of an article which is libelous upon its face, it was published with malicious intent.

IDEM—ACTUAL DAMAGES—PECUNIARY LOSS.—*Held*, that under the findings of the jury, the plaintiff was entitled to actual damages, that is, compensation for the injury he had received by reason of the libelous publication, to which might be added any pecuniary loss, if any, sustained by him, independent of the motive or intent with which the publication was made.

IDEM—EXPENSES AND COSTS.—*Held*, that the plaintiff, in actions of this kind, is not always entitled to recover the expenses and costs that may have been incurred by the prosecution of his suit from the simple fact that he is entitled to a verdict in his favor.

IDEM—NOMINAL DAMAGES.—Where there is no ill-will or malice on the part of the defendant, no special damages, actual injury, or pecuniary loss, alleged or proven, the jury may find a verdict for only nominal damages.

INSTRUCTIONS CALCULATED TO MISLEAD SHOULD BE REFUSED.—An instruction which is calculated to mislead the jury should be refused.

IDEM—NEED NOT BE REPEATED. —The action of the court in refusing certain instructions sustained, upon the ground that the principles embodied therein were given, in substance, in other instructions.

WHETHER ARTICLE IS LIBELOUS, WHEN A QUESTION OF FACT.—When the language of the article complained of is susceptible of different constructions, it should be submitted to the jury as a question of fact, whether it was libelous or not.

INSTRUCTION THAT PUBLICATION WAS NOT PRIVILEGED, ERRONEOUSLY REFUSED.—The court refused to instruct the jury that "in this case the defendant does not plead nor rely on the truth of the matter complained of, and I charge you, as a matter of law, that the publication complained of is not privileged, therefore there is no legal excuse or defense set up by the defendant:" *Held*, error.

INSTRUCTIONS FOREIGN TO THE ISSUES SHOULD BE REFUSED.—Where the question, whether the alleged libelous article was or was not privileged, was foreign to the issues raised by the pleadings and proofs: *Held*, that the instructions given upon this point, although containing abstract principles of law that might be correct in certain cases, were not applicable to the facts of this case, were calculated to mislead the jury, and ought to have been refused.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts are stated in the opinion.

*C. S. Varian,* for Appellant:

I. For the publication of a defamatory libel the law gives an action and permits but two defenses: the truth of the libel, and that it was privileged. For the purpose of maintaining the action in the absence of legal excuse, the law infers malice, and only allows proof or pleading relative to actual malice, or bad intent, in mitigation of primitive as distinguished from compensatory damages. (*Bush* v. *Prosser,* 11 N. Y. 356; *Wilson* v. *Noonan,* 35 Wis. 321.)

II. Whatever is relied upon as a defense must be pleaded. (Civ. Pr. Act, sec. 63; *Bush* v. *Prosser,* 11 N. Y. 349; *Bennett* v. *Matthews,* 64 Barb. 410; *Wilson* v. *Fitch,* 41 Cal. 363.)

III. It is no circumstance in mitigation that the libel was committed by a correspondent. (*Talbutt* v. *Clark,* 2 M. & Rob. 312; *Sanford* v. *Bennett,* 24 N. Y. 20; Townshend Slander and Libel, sec. 211, n. 3; *State* v. *Butman,* 15 La. Ann. 166.) Nor is it any answer, even in mitigation, to say the libel was published as a matter of news. (Townshend on Libel, 439, sec. 252; *Sheckell* v. *Jackson,* 10 Cush. 25; *Davison* y. *Duncan,* 7 Ell. & B. 231.)

IV. When a publication of a defamatory libel appears, and no legal excuse is claimed or shown, evidence in mitigation is confined to rebuttal of express malice, and consequently in such case the inquiry is necessarily directed only to the motive or intent of the defendant.

V. Repetition of the defamatory matter is admissible for the purpose of showing malice. (Towns. secs. 392–394; *Fry* v. *Bennett,* 28 N. Y. 328; Whart. Ev., vol. 1, sec. 25; *Van Derveer* v. *Sutphin,* 5 Ohio St. 293.)

VI. The publication of plaintiff's complaint was not privileged. (*Stiles* v. *Nokes,* 7 East, 493; *Hoare* v. *Silverlock,* 9 C. B. 20; *Rex* v. *Carlile,* 3 B. & Ald. 167; *Ryalls* v. *Leader,* 1 Law Rep. (Ex.) 298; 1 Stark. on Slander, 263; *Stanley* v. *Webb,* 4 Sand. 21; *Clement* v. *Lewis,* 3 Brod. & Bing. 297.)

VII. The testimony of the defendant as to the circumstances under which the libelous article was published, was improper, and ought to have been rejected, because not

pleaded. (Civ. Pr. Act. sec. 63; *Wilson* v. *Fitch*, 41 Cal.
380.) It was also error to allow defendant to testify that
he did not intend to injure plaintiff. (*Wilson* v. *Noonan*, 35
Wis. 323; 10 B. & C. 472; 3 Id. 584; 10 Eng. C. L. R. 79.)
The evidence was insufficient to justify the special finding
against malice.

VIII. It was the duty of the court to declare the article
libelous. (*Lewis* v. *Chapman*, 16 N. Y. 371; *Pittock* v.
*O'Neill*, 63 Pa. St. 253; S. C., 3 Am. Rep. 546; *Snyder* v.
*Andrews*, 6 Barb. 43; *Sanderson* v. *Caldwell*, 45 N. Y. 401.)
The facts being uncontroverted, it is a matter of law whether
a publication is privileged. Towns. sec. 288, p. 484; *Dar-
by* v. *Ousely*, 1 Hurl. & N. 1; *Wenman* v. *Ash*, 13 C. B.
836; *Wilson* v. *Noonan*, 23 Wis. 106.)

*R. M. Clarke,* also for Appellant.

*Lewis & Deal,* for Respondent:

I. The verdict is sustained by the evidence. Malice is
an essential element to sustain the action of libel. (*Bush*
v. *Prosser*, 11 N. Y. 357; *Lewis* v. *Chapman*, 16 Id. 372;
*Maitland* v. *Goldney*, 2 East, 426; *Commonwealth* v. *Clapp*, 4
Mass. 163; 15 Pick. 339; Towns. on Slander, 136.)

II. The mitigating circumstances offered by plaintiff
were properly admitted as tending to repel malice, and in
mitigation of damages. (Sedg. on Dam. 686; *Reed* v. *Bias*,
8 Watts & Sarg. 189; *Gray* v. *Waterman*, 40 Ills. 522;
*Reeder* v. *Purdy*, 41 Id. 279; Towns. on Libel, 414; *Wilson*
v. *Noonan*, 35 Wis. 322; *State* v. *Harrington*, 12 Nev. 125;
53 Ind. 420.)

III. The jury found there was no malice, and as no ac-
tual damage was shown, the verdict for one dollar was in
strict accordance with the decided cases. (Towns. 289,
note 3; Folkard's Stark. 391, 647.)

IV. There was no showing that plaintiff had expended
any costs in vindicating his character, nor was there any
claim made by the plaintiff that he was entitled to the re-
covery of any such costs. But in any event the jury had
no right to take that matter into consideration in making

up the verdict.   (Towns. on Slander, 289, and note 2, 535; *Hicks* v. *Foster*, 13 Barb. 663; Folkard's Stark. on Slander, 739.)

V. The court did not err in excluding the published complaint.   It was a matter occurring after suit brought. (*Keenholts* v. *Becker*, 3 Denio, 346; *Frazier* v. *McClosky*, 60 N. Y. 337; Towns. on Slander, 395, and note.)   The publication was privileged, and therefore not admissible for any purpose.   (Towns. 229, and note, 399.)

VI. Independent words or libels, which may themselves be the foundation of an action, can not be admitted even for the purpose of.establishing malice.   (*Howard* v. *Sexton*, 4 N. Y. 157; *Root* v. *Lowndes*, 6 Hill (N. Y.), 518; *De Fries* v. *Davis*, 7 C. & P. 112; *Frazier* v. *McCloskey*, 60 N. Y. 337.)

VII. The court properly submitted the question of fact, whether the article complained of was libelous or not, to the jury.   (Towns. on Slander, 281.)   The instructions given by the court were correct.   The exception to the charge of the court, not being specific, can not be considered by this court.   When the charge contains several propositions, and an exception is taken to the charge generally, if either proposition be sound, the exception will be unavailing.   (*Kluender* v. *Lynch*, 4 Keyes, 361; 3 Wait's Practice, 205.)

*Wm. Cain*, also for Respondent.

By the Court, HAWLEY, J.:

This is an action of libel brought by plaintiff to recover ten thousand dollars damages claimed to have been sustained by him on account of the alleged malicious publication by defendant, in the Reno State Journal, of an article headed "Carson Correspondence."   The portion of the article complained of reads as follows:

"The town talk is the tongue-lashing of Deacon Parkinson on Washoe's ex-senator Thompson.   The reverend gentleman denounces him as a scoundrel and other choice epithets, and even insinuated that the ex-senator had sold potatoes and the sacks contained bullion from Dall's mill, many years since; that the ex-senator, for a consideration,

voted against his own resolution on fares and freights four years since, and many other sweet reflections on the gentleman."

The answer admits the publication of the article; denies "that the same was either slanderous, malicious, or defamatory;" alleges that "defendant is not guilty of the malice and wrongful misconduct" laid to his charge; denies "that the plaintiff was greatly, or at all, injured in his good name or fame, or been brought into public scandal, infamy, or disgrace, or that he has suffered any damages whatever by reason thereof;" alleges that the matters therein set forth "were reported to him as having actually taken place," and were published "as a matter of public news and occurring events, and not from any motive of malice towards plaintiff."

The jury found a special verdict that the defendant was not actuated by any malice towards the plaintiff in the publication of the alleged libel, and a general verdict in favor of plaintiff for one dollar damages.

This appeal is taken by plaintiff from the judgment and from the order of the court denying his motion for a new trial.

The plaintiff, to make out his case, offered in evidence the full text of the publication as it appeared in defendant's newspaper; also, an editorial, which appeared after the commencement of this suit, headed, "The Journal Libel Suit," which reads as follows:

"We have something on hand for which we did not bargain. It is a libel suit in which the plaintiff claims ten thousand dollars damages. Had a thunderbolt fallen from heaven and struck us, we could not have been more surprised than when Sheriff Lamb served us with a copy of the summons and complaint in an action against us for libel commenced by Hon. William Thompson. We publish in another column the full text of the complaint for the information of the public. We herewith reprint the 'false, libelous, defamatory matter' complained of."

(Here follows the portion of the article alluded to:)

"The above appeared in the Journal and was a portion of a letter headed, 'Carson Correspondence,' and was pub-

lished simply as a matter of gossip. Of its truth or falsity we know nothing; but to the best of our information and belief there is nothing in it. It crept into the paper under these circumstances, we attaching no particular importance to it. We have no disposition to libel any man, and certainly we know nothing of Mr. Thompson's character that would cause us to willfully and maliciously attempt to injure him in the estimation of the public. If Mr. Thompson had any idea that the paragraph in question had any tendency to do him any injury whatever, a simple request from him would have secured from us the publication of any explanation he could have wished to make in regard to the matter. It is safe to say that any man who read the paragraph never paid any more attention to it."

Plaintiff then offered to introduce and read in evidence a copy of the complaint and head notes, as published in defendant's paper, for the purpose of showing a repetition of the libelous matter; to show actual malice and to aggravate the damages.

The head notes were: "Ten Thousand Dollars." "The Journal's First Libel Suit." "Hon. William Thompson the Plaintiff." "Full Text of the Complaint." Then follows a copy of the complaint. The court refused to admit this testimony.

The plaintiff then introduced and read in evidence all the article taken from the Truckee Republican, as published in defendant's paper, except the sentence we have italicized, which was excluded by the court.

The article and heading thereto reads as follows:

"THAT LIBEL SUIT.

"The Reno correspondent of the Truckee Republican has the following concerning our libel suit:

"'*The opinion is prevalent that it is a clear case of bulldosing, and an underhanded scheme concocted by Powning's enemies to ruin him financially.*

"'The article is nothing but a vague rumor, and was written by the Carson correspondent as a piece of gossip at the capital, with no intention to slander any one. The honorable gentleman estimates his grievance, loss of character,

and other injuries sustained from the publication of the article, at ten thousand dollars. (Outsiders think it worth about fifteen cents.) The complaint, which was published, is more damaging to Thompson's integrity than the original article. Of course he thinks he is the most abused man in the county, and nothing but a trial, and him paying the costs of suit, will satisfy him.' "

The defendant was allowed to testify, in his own behalf, that his relations with the plaintiff were pleasant; that they belonged to the same political party; that he had supported plaintiff as a candidate for public office; that he had no ill-will or malice against the plaintiff, and that he did not intend to injure him by the publication. His reason for publishing the article from the Truckee Republican was simply to show a ratification of the public sentiment, and to defend the reputation of his own paper. His testimony as to the surrounding circumstances attending the publication of the alleged libelous article, was substantially to the same effect as the editorial concerning the suit. It was published inadvertently as a matter of gossip, without his knowing, or inquiring, whether it was true or false. It was considered as a sort of joke that nobody would pay any attention to, etc.

These facts, in connection with the action of the court in giving and refusing certain instructions, substantially present all the circumstances attending the trial of this case necessary to be considered in deciding the various legal points that have been elaborately and ably discussed by the respective counsel. Before entering into any discussion of the specific rulings of the court, it is proper to state that there is some diversity of opinion to be found in the decided cases, upon the important questions involved in this appeal. It is often difficult, if not impossible, to lay down a general rule that would be applicable to all cases upon this subject.

We shall therefore endeavor, in deciding the various and vexed questions, to declare the rule which, in our opinion, is applicable to the facts of this case, is based upon substantial reason, and best calculated to promote the ends of justice, without any special reference to the conflicting au-

thorities; for it may be, as was said by the supreme court
of Michigan, that " the attempt to trace the line of mere au-
thority through the maze of hostile decisions, would be calcu-
lated only to confuse and lead the mind astray from the real
principles of justice. involved in it, and could serve. no use-
ful end." (*Hudson* v. *Dale,* 19 Mich. 28..)

  1. Did the court err in refusing to allow plaintiff to intro-
duce in evidence the publication of the copy of plaintiff's
complaint?   We think not.

A fair and impartial account of the proceedings in a court
of justice is, as a general rule, a justifiable publication.  Pro-
prietors of newspapers are not to be punished for publish-
ing a fair, full, and true report of judicial proceedings, ex-
cept upon actual proof or malice in making the report.   The
reason for this rule is, that the public have a right to know
what takes place in a court of justice, and unless the pro-
ceedings are of an immoral, blasphemous, or indecent char-
acter, or accompanied with  defamatory observations or
comments, the publication is privileged.  (*Ryalls* v. *Leader,*
1 Ex. L. R. 298; *Wason* v. *Walter,* 4 L. R. Q. B. 82; *Dav-
ison* v. *Duncan,* 7 E. & B. 231; *Forbes* v. *Johnson,* 11 B. Mon.
48; *Saunders* v. *Baxter,* 6 Heisk. 382; *Stanley* v. *Webb,* 4
Sandf. 26; *Ackerman* v. *Jones,* 37 N. Y. 54; *Johnson* v. *Brown,*
13 West Va. 112, 131; Cooley's Const. Lim. 448; Townshend
on Slander and Libel, secs. 221, 229.)

Preliminary proceedings which are purely *ex parte* in
their nature do not come within this rule, because they have
a tendency to prejudge those whom the law still presumes
to be innocent, and to poison the source of justice. (*Ga-
zette Company* v. *Timberlake,* 10 Ohio St. 548; *Kelley* v. *Lafitte,*
28 La. An. 435;. Cooley on Torts, 210, and authorities there
cited.

Without further specification it is enough to say that the
facts of this case do not bring it within any of the recog-
nized exceptions to the general rule.

The head notes contain no words that could, by any sort
of construction, be deemed malicious, or defamatory.  It
is apparent that the plaintiff was not injured by their rejec-
tion.

2. Did the court err in excluding any part of the article copied from the Truckee Republican?

The words excluded do not, in our opinion, come within the rule which permits subsequent publications to be introduced in evidence for the purpose of showing malice, as announced in Townshend on Libel, sec. 394, cited by appellant's counsel. The language did not tend to explain any ambiguity in the matter declared upon. It was not of like import; nor did it tend to indicate the motive, temper, or disposition of the defendant in publishing the article complained of. It contained a charge of an entirely different nature. It was not admissible for the purpose of proving malice, or for any other purpose. (*Howard* v. *Sexton*, 4 N. Y. 159; Townshend on Libel, sec. 392.)

3. Did the court err in admitting defendant's testimony, under the pleadings?

Is the verdict of the jury sustained by the evidence?

These questions present the most important points argued by counsel, and are so intimately blended as to be properly considered together. Our statute provides that, in an action for libel or slander, "the defendant may, in his answer, allege both the truth of the matter charged as defamatory, and any mitigating circumstances to reduce the amount of damages, and, whether he prove the justification or not, he may give in evidence the mitigating circumstances." (Civ. Pr. Act, sec. 63.)

As the answer of the defendant did not put in issue the question, whether the article was true, or whether it was privileged, appellant claims that all the testimony offered by defendant, tending to rebut the presumption of malice, and to mitigate the damages, was improperly admitted.

Under the rule which prevailed in many of the states prior to the adoption of statutes similar to ours, it was held that no evidence in mitigation of damages could be given when a justification was pleaded. Proof tending to establish the truth of the libel was admissible under a plea of justification; but if the proof fell short of a complete justification, it could not be received in mitigation of damages. The plea of justification, if not proven, was considered an

aggravation of damages. It was deemed conclusive evidence of malice, and the defendant was precluded from proving that the publication was made in the honest belief that it was true, and without any malice. It was also held in some of the states following, or pretending to follow, the rule announced in *Underwood* v. *Parks*, 2 Strange, 1200, that if the defendant did not plead the truth of the libel as a defense, he could not, under the general issue, prove the words to be true in mitigation of damages.

To avoid the injustice and obviate the hardships arising under these rules, as applied in many cases, the legislature in several states enacted a law similar to the statute under consideration, so as to enable the defendant not only to show, if he could, the truth of the article published in justification and defense of the action, but if his testimony did not march up to the full proof of a complete justification, he might give in evidence the mitigating circumstances which tended to rebut the presumption of malice. (*Van Derveer* v. *Sutphin*, 5 Ohio St. 293; *Huson* v. *Dale*, 19 Mich. 29; *Bush* v. *Prosser*, 11 N. Y. 347; *Kennedy* v. *Holborn*, 16 Wis. 458; *Wilson* v. *Noonan*, 35 Id. 321; *Wilson* v. *Fitch*, 41 Cal. 364.)

Since the adoption of the code, the courts have generally held that the defendant may prove, in mitigation of damages, facts and circumstances which disprove malice, although they tend to establish the truth of the defamatory charge, without any allegation in the answer that the charge is true. This question, however, is not presented by the facts of this case. The testimony introduced upon the part of the defendant did not tend, in the slightest degree, to establish the truth of the defamatory charge. It was not offered for any such purpose. The only issues raised by the answer were: whether the article was libelous; whether defendant was actuated by any malice in publishing it, and whether plaintiff had suffered any injury. Upon these issues the defendant's testimony was clearly admissible.

In *Wilson* v. *Noonan, supra*, the answer of the defendant consisted only of a general denial of each and every allegation of the complaint. In delivering the opinion of the

court, Dixon, C. J., said: "That where the purpose is to disprove malice (by which we mean bad or wicked motive, or intent) by direct evidence, as by the testimony of the party himself, showing or tending to show the non-existence of the fact, there the absence of malice, thus proved, or offered to be, as a mitigating circumstance, need not be pleaded otherwise than by the general issue.    *    *    * So far as wicked motive or bad intent is, or may be, relied upon as a ground for enhancing the damages against the defendant, so far the defendant may meet and rebut the fact by direct evidence to the contrary, without special allegation in his answer; though if collateral facts and circumstances be relied upon to show the absence of such motive or intent, they must be pleaded.. Such seems to be the fair and reasonable interpretation of the statute, and the meaning which must be ascribed to the words 'mitigating circumstances,' as used in it."

The collateral facts, averred in the answer and testified to by the defendant, that the article was reported by a correspondent and was published as a matter of news, without any intention to injure the plaintiff, did not tend to justify the publication. Proprietors of newspapers are not entitled, under the law, to claim any justification in publishing items of news or detailing occurring events that are libelous in their character, whether furnished by correspondents, reported by other persons, or copied from other newspapers. (*Talbutt* v. *Clark*, 2 Mood. & Rob. 312; *State* v. *Butman*, 15 La. An. 166; *Perret* v. *New Orleans Times*, 25 Id. 170; *Sanford* v. *Bennett*, 24 N. Y. 27; Cooley on Torts, 209, 219.) They furnish items of news and editorials at their own risk. They are responsible for whatever appears in their paper. They are not to be released from any liability on account of any ignorance, inadvertence, or thoughtlessness on their part, nor for matter published without their knowledge or authority. (*Dunn* v. *Hall*, 1 Ind. 344; *Buckley* v. *Knapp*, 48 Mo. 159; *Storey* v. *Wallace*, 60 Ill. 51; *Moore* v. *Stevenson*, 27 Conn. 27, Cooley on Torts, *supra*.) They are liable for what they publish in the same manner as other individuals, and are subject to the same rules, rights, and

privileges.   They have the right to publish the truth, but no right to publish a falsehood to the injury of others. (*Sheckell* v. *Jackson*, 10 Cush. 25; Towns. on Libel, sec. 252; Cooley's Const. Lim. 453–455.)

If the proprietor of a newspaper, to quote the language of Nelson, C. J., in *Hotchkiss* v. *Oliphant*, 2 Hill, 514, "chooses to become the indorser and retailer of private scandal, without taking the trouble of inquiring into the truth of what he publishes, there is no ground for complaint, if the law, which is as studious to protect the character as the property of the citizen, holds him to this responsibility. The rule is not only just and wise in itself, but if steadily and inflexibly adhered to and applied by courts and juries, will greatly tend to the promotion of truth, good morals, and common decency on the part of the press, by inculcating caution and inquiry into the truth of charges against private character before they are published and circulated throughout the community."

The testimony of the defendant, in his own behalf, was an admission that he was not justified in publishing the article complained of, and, if libelous, that he was liable in damages for the wrongful act.   But he had the right to show the circumstances under which the publication was made, and to introduce any evidence which tended to throw any light upon his intent and motive, not in mitigation of the actual damages sustained by plaintiff, but as tending to repel malice and to mitigate exemplary damages.   (*Reed* v. *Bias*, 8 Watts & Serg. 190; *Robinson* v. *Rupert*, 13 Pa. St. 524; *Prentiss* v. *Shaw*, 56 Me. 427; *Shilling* v. *Carson*, 27 Md. 186; *Gray* v. *Waterman*, 40 Ill. 522; *Donnelly* v. *Harris*, 41 Id. 126; *Storey* v. *Early*, 86 Id. 463; 2 Greenl. on Ev., sec. 275.)

In order to maintain this species of action, it is necessary that there should be malice in the defendant, and an injury to the plaintiff, and that the words of the article should be untrue.   (*Maitland* v. *Goldney*, 2 East, 426.)   Malice is essential to every action for libel.   (*Lewis* v. *Chapman*, 16 N. Y. 372.)   Without some words of caution or explanation, the terms malice or malicious, as used in defining libel

or slander, are liable to mislead courts as well as juries. As frequently used they only mean that the libelous publication was made without legal excuse. (Cooley on Torts, 219.) It is, therefore, important, in the consideration of the question of malice, to keep in view the fact, as is well expressed by Shaw, C. J., in *Commonwealth* v. *Snelling*, that "it is not necessary, to render an act malicious, that the party be actuated by a feeling of hatred or ill-will towards the individual, or that he entertain and pursue any general bad purpose or design. On the contrary, he may be actuated by a general good purpose, and have a real and sincere desire to bring about a reformation of manners; but if, in pursuing that design, he willfully inflicts a wrong on others, which is not warranted by law, such act is malicious." (15 Pick. 340.) The law always presumes that in the publication of an article which is libelous upon its face, it was published with malicious intent. The law does not impute malice not existing in fact, but presumes a malicious motive for making a charge which is both false and injurious, when no other motive appears. In such cases it is unnecessary for the plaintiff, to entitle him to recover, to introduce any evidence from which malice may be inferred other than the libelous article. (*Darby* v. *Ousely*, 1 H. & N. 1; *Lewis* v. *Chapman*, supra; *True* v. *Plumley*, 36 Me. 478; *Wilson* v. *Noonan*, supra; *White* v. *Nicholls*, 3 How. (U. S.) 266; Roscoe Cr. Ev. 679; 2 Greenl. on Ev., sec. 418.)

But if the article is ambiguous, or the intentions of the publisher left doubtful, it is proper for the plaintiff to adduce any evidence which tends to show that the defendant was actuated by express malice in order to enhance the damages. (*Bush* v. *Prosser*, supra; *Huson* v. *Dale*, supra; *Fry* v. *Bennett*, 28 N. Y. 328; *Jellison* v. *Goodwin*, 43 Me. 289; Towns. on Libel, sec. 392.)

The presence or absence of what the books denominate express malice is often an important factor to be considered by the jury in arriving at the amount of damages that a party may be entitled to recover. (*Saunders* v. *Baxter*, 6 Heisk. 386, and other authorities previously cited.)

In this case the plaintiff introduced testimony tending to show actual or express malice upon the part of the defendant. The defendant introduced testimony tending to prove that he was not actuated by any malice whatever. It was the legitimate province of the jury to determine this disputed question. It is enough for us to say that the evidence is, in our opinion, sufficient to sustain the special verdict in defendant's favor. There being then, in the opinion of the jury, no express malice or ill-will upon the part of the defendant, and the article being considered libelous, the only remaining question to be determined was as to the amount of damages that plaintiff was entitled to recover.

The plaintiff was entitled to actual damages, that is, compensation for the injury he had received by reason of the libelous publication, to which might be added any pecuniary loss, if any, sustained by him, independent of the motive or intent with which the publication was made. "Damages," says Greenleaf, "are given as a compensation, recompense, or satisfaction to the plaintiff for an injury actually received by him from the defendant. They should be precisely commensurate with the injury." (2 Greenl. on Ev., sec. 253.) The damages to be considered must be the necessary, natural, and proximate consequence of the act complained of. (2 Greenl. on Ev., sec. 256; Townshend on Libel, sec. 109.) Appellant contends that the verdict can not be sustained, because the expense and cost of plaintiff in vindicating his character were not considered by the jury. It is undoubtedly the duty of the court, whenever requested so to do, to instruct the jury as to the rules and principles which should govern them in fixing the amount of damages in any given case. But the truth is, that from the very nature of the action, the amount is to be determined by the jury as a question of fact, due regard being had to all the surrounding circumstances.

If plaintiff's counsel believed that the expenses and costs of vindicating his client's character were a necessary element for the jury to consider in awarding compensatory damages, he ought to have asked the court to so instruct the jury. No instructions were asked for upon this point. There is

nothing in any of the instructions given which prohibited the jury from considering that question. It therefore necessarily follows that unless these expenses and costs are always to be allowed when the verdict is in plaintiff's favor, he is not, upon this ground, entitled to a new trial.

We have examined the authorities cited in Townshend on Libel, sec. 289, and Stark. on Sland. 739, referred to by counsel; also, *Finney* v. *Smith*, 31 Ohio St. 529, and others, which bear more or less upon this subject. Our conclusion is, that the plaintiff, in actions of this kind, is not always entitled to recover the expenses and costs that may have been incurred by the prosecution of his suit from the simple fact that he is entitled to a verdict in his favor. If the jury believed that the plaintiff was compelled to bring this action in order to vindicate his character, then they might have given him substantial damages, which would have covered the expenses and carried the costs. But, on the other hand, if the jury believed from the evidence, as the verdict intimates, that it was not necessary so to do, and that the publication of the article did not, in fact, injure the plaintiff in his business, good name, fame, credit, or reputation, or expose him to public hatred, contempt, or ridicule, and that he had suffered no pecuniary loss, they had the right to find only nominal damages.

In this connection it must be remembered that the plaintiff did not allege or attempt to prove any special damage, injury, or pecuniary loss.

Where there is no ill-will or malice on the part of the defendant, no special damages, actual injury or pecuniary loss, alleged, or proven, the jury may find a verdict for only nominal damages. (*Wakelin* v. *Morris*, 2 F. & F. 26; *Rundell* v. *Butler*, 10 Wend. 119; *Dobard* v. *Nunez*, 6 La. An. 294; *Flint* v. *Clark*, 13 Conn. 369; Stark. on Sland., secs. 391, 647; Townshend on Libel, secs. 198, 289.)

4. Did the court err in giving or refusing any of the instructions asked by the respective parties, or given by the court of its own motion?

The record presents all the instructions given or refused by the court. They are quite numerous, and cover almost

every conceivable proposition relating to the law of libel. In general terms, it may be said that all of the instructions given by the court, except as hereinafter specified, when considered as a whole, are substantially correct.

The charge of the court of its own motion, to which objection is made, is certainly subject to criticism.

After informing the jury, as to the definition of a libel, the court proceeded as follows: "If you find that the defendant was not actuated by any malice in making the publication, and that the same does not constitute a libel, as above defined, and that plaintiff has sustained no pecuniary loss or damage, then the jury must find for the defendant."

Now, if the article was not libelous and was not published maliciously, defendant was entitled to a verdict in his favor, regardless of any question of injury, loss, or damage on the part of plaintiff, and the court erred in adding, "and that plaintiff has sustained no pecuniary loss or damage." This error, however, instead of being prejudicial to the plaintiff, as claimed by his counsel, is injurious to the defendant, as it introduced a false quantity (in this connection) into the calculation as to his right to recover a verdict.

There is nothing in this charge of the court, nor in any of the instructions given, which would lead the jury to believe that they might find a verdict for defendant simply because the plaintiff had suffered no pecuniary loss, and the question whether or not such an instruction would be proper, is not presented by the record in this case.

The statement in instruction No. 3, asked by plaintiff, that the defendant "admitted *all* the extraneous matter alleged in the complaint," is too broad. It was calculated to mislead the jury, and was therefore properly refused.

The action of the court, in refusing to give instructions 4 and 18, is sustained upon the ground that the principles embodied therein were given, in substance, in other instructions asked by the plaintiff, to wit: in instructions 2, 7, 9, 16, and 21. The eleventh instruction reads as follows: "I instruct you that the following portion of the article complained of by plaintiff, *i. e.*, 'that the ex-senator, for a consideration, voted against his own resolution on fares and

freights four years since,' is, under the admissions in this case, false and without legal excuse; that it is a defamatory libel, and its publication is not privileged, and the plaintiff is entitled to recover damages he has sustained by reason of its publication by the defendant."

This instruction was refused by the court upon the ground that, " the language is susceptible of more than one interpretation; and therefore the question, whether it is defamatory and libelous, is one for the jury to determine."

If the language was unambiguous, it would have been the province of the court to determine its construction, and to instruct the jury whether or not, upon its face, it was actionable *per se;* but can it be said that the language is entirely free from doubt? Certainly the inference is very strong that the ex-senator is charged with voting in his official capacity as a state senator; but is not the language susceptible of another and different meaning? Might it not be construed to mean that he cast such a vote in a political caucus, or in some meeting or convention, having no relation whatever to his official duties as a state senator? If the language is susceptible of different constructions, it was properly submitted to the jury, as a question of fact, whether it was libelous or not. (*Snyder* v. *Andrews,* 6 Barb. 43; *Sanderson* v. *Caldwell,* 45 N. Y. 398; *Clarke* v. *Fitch,* 41 Cal. 480; *Van Vactor* v. *Walkup,* 46 Id. 124; Townshend on Libel, secs. 281, 384.)

We are of opinion that the court did not err in refusing to give this instruction.

A majority of the court are of opinion that the court erred in refusing to give the seventeenth instruction asked by plaintiff, and in giving the third and fourth instructions asked by defendant.

These instructions read as follows.

Seventeenth. "In this case the defendant does not plead nor rely on the truth of the matter complained of, and I charge you, as a matter of law, that the publication complained of is not privileged; therefore, there is no legal excuse or defense set up by the defendant."

3. " Comments and criticisms on the character of public

men are allowable if not made maliciously. If, therefore, you find that the plaintiff was engaged in politics and seeking public position, and the article in question was published simply to give the people information as to the standing and qualification of the plaintiff, and not with a malicious intention of injuring the plaintiff, then your verdict must be for the defendant."

4. "A publication fairly made by a person in the discharge of some public duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned, comes within the class of privileged or authorized communications. A person, therefore, can not be held responsible for a statement or publication tending to disparage private character, if it is called for by the ordinary exigencies of social duty, or is necessary and proper to enable him to protect his own interest or that of another, provided it is made in good faith and without a willful design to defraud."

The question whether the alleged libelous article was or was not privileged was foreign to the issues raised by the pleadings and proofs.

The instructions given upon this point, although containing abstract principles of law that might be correct in certain cases (*Moore* v. *Butler*, 48 N. H. 161; *Gassett* v. *Gilbert*, 6 Gray, 94), were not applicable to the facts of this case, and were calculated to mislead the jury into the belief that the article, or some portion of it, was privileged.

If the article only contained one charge, which was alleged to be libelous, then it might be consistently claimed, as is now argued by respondent's counsel, that the plaintiff was not prejudiced by the erroneous action of the court; because the jury, by the general verdict, found that the article was not privileged. But there are two distinct charges contained in the article, both of which are alleged in plaintiff's complaint to be libelous, and upon either of these charges, if libelous, the plaintiff claimed he was entitled to recover a verdict in his favor. The court at his request instructed the jury as follows: "Twelfth—I further instruct you, that if you find the language set out in the

complaint, ' and even insinuated that the ex-senator had sold potatoes and the sack contained bullion from Dall's mill, many years since,' constituted, in its ordinary and usual sense, a charge of larceny, as laid by the innuendo in the complaint, and you are to read and consider the whole publication in determining the question, then such charge is a false and defamatory libel, and you should consider and award the plaintiff such damages, in addition to those he may be awarded on account of the other libelous matter, as he may have sustained. That is, if you so find, you will have an additional element on which to base an award of damages; but you will award damages on the publication as a whole and not on detached parts of it."

Under these circumstances it can not be said that the error of the court, in refusing to give the seventeenth instruction, asked by plaintiff, and in giving the third and fourth instructions, asked by defendant, was cured by the general verdict, for *non constat*, it may be that the jury, in considering the instructions given, came to the conclusion that the charge against the plaintiff as a senator was privileged, and may have based their verdict solely on the charge relating to the bullion at Dall's mill, and awarded damages accordingly.

The judgment of the district court is reversed, and the cause remanded for a new trial.

Beatty, C. J., concurring:

I concur in the judgment, and in the opinion of the court, except upon one point. I think it was error to exclude any portion of the article copied from the Truckee Republican. If the charge contained in the excluded part was not actionable in itself—and in my opinion it was not—it was proper evidence under the rule as laid down by Townshend (secs. 392, 394), and even if it was actionable it was admissible under what I deem the more reasonable rule stated by Greenleaf (2 Ev., sec. 418).