## Sheen v. Peoria Journal Company.

| 53 | 267 |
| 109 | ³228 |
| 109 | ³229 |

1. LIBEL—*Construction of Words—Pleading.*—Where the language complained of, as set forth in the articles constituting the alleged libel, when reasonably construed, does not implicate the plaintiff nor sustain the meaning charged in the declaration, a demurrer is properly sustained.

2. NEW TRIALS—*Action for Libel—Verdict Against the Evidence.*— The general rule is, that in actions for libel, and other actions vindictive in their nature, a new trial will not be granted merely because the verdict is against the evidence.

3. LIBEL—*Repetition—Other Publications—Malice and Ambiguity.*— In the trial of an action for libel, a repetition by the defendant of the defamatory matter complained of is admissible to prove malice, and the plaintiff may give in evidence other publications of like import to those declared upon or explanatory of any ambiguity contained therein.

4. LIBEL—*Evidence for the Purpose of Showing Malice, Admissible.* —In trials for libel, if a refused publication is admissible only for the purpose of showing malice and increasing the plaintiff's damages, and the jury find the defendant not guilty of publishing the libels, then they do not reach the point where the consideration of the refused proof, if admitted, would have been material. The exclusion of proper evidence is not reversible error, where it appears that if admitted it would not have benefited the party offering it.

Memorandum.—Action for libel. Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Circuit Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 12, 1893,

The statement of facts is contained in the opinion of the court.

APPELLANT's BRIEF, MCCULLOCH & MCCULLOCH AND GEO. B. FOSTER, ATTORNEYS.

It is for the court to decide whether a publication is capable of a meaning ascribed to it by an innuendo, and for the jury to decide whether such meaning is truly ascribed. Blagg v. Stuart, 59 E. C. L. 899; Jenner v. Beckett, L. R., 11 Q. B. 12; Mulligan v. Cole, L. R., 10 Q. B. 549; Thompson v. Grimes, 5 Ind. 385; McDonnel v. Lord et al., 27 Ill. App. 111; Clifford v. Cochrane, 10 Brad. 571.

Where language is used which only tends to impeach the

character or reputation of any one, such language is libelous, and when that appears from the articles themselves, as in this case, their falsity and the malice underlying their publication is established, unless justification is pleaded. Schmisseur v. Kreilich, 92 Ill. 352; Miller v. Johnson, 79 Ill. 60; Stumer v. Pitchman, 124 Ill. 251; Jacksonville Journal Co. v. Beymer, 42 Ill. App. 443; Rearick v. Wilcox, 81 Ill. 81; Flagg v. Roberts, 67 Ill. 488.

APPELLEE'S BRIEF, STEVENS & HORTON AND I. C. PINKNEY, ATTORNEYS.

Where words are reasonably susceptible of two constructions, the one an innocent, the other a libelous construction, it is a question for the jury to determine which construction is the proper one. Newell on Defamation, Libel and Slander, 291.

Where the plaintiff ascribes a certain meaning to the words complained of, it is for the jury to determine whether that meaning is correctly ascribed. Young v. Richardson, 4 Brad. 364; Thompson v. Powning, 15 Nev. 195; McDonald v. Woodruff, 2 Dillon 246.

The plaintiff, by his instructions, submitted the character of these publications to the jury. Their finding should be final, not only because warranted by the evidence, but because the rule is that in actions for libel or defamation a new trial will not be granted merely because the verdict is against the weight of the evidence. Clark v. Hatfield, 88 Ill. 440; Townshend on Slander, 3d Ed. p. 543; Harbison v. Shook, 41 Ill. 141.

The rule is that other publications are not admissible except for the purpose of showing malice, and to be admissible, they must be of like import and tend to indicate the motive, temper or disposition of the defendant in publishing the articles complained of. Thompson v. Powning, 15 Nev. 195; Beardsley v. Bridgman, 17 Ia. 290; Gribble v. Pioneer Press Co. (Minn.), 25 N. W. 710; Saunders v. Baxter, 6 Heisk. (Tenn.) 369; Starkie on Evidence, p. 870, Vol. 2; Ranson v. McCurley (Ill.), 31 N. E. 119.

The rule is that if an article is libelous, the law implies malice, and proving express malice only aggravates the damages. Newell on Defamation, Libel and Slander, p. 318, 319, 321 and 323; Rearick v. Wilcox, 81 Ill. 77; Ranson v. McCurley (Ill.), 31 N. E. 119; Gilmer v. Eubank, 13 Ill. 271; McKee v. Ingalls, 4 Scam. 30; Mitchell v. Milholland, 106 Ill. 175; Hatch v. Potter, 2 Gil. 725.

Mr. Presiding Justice Harker delivered the opinion of the Court.

This was an action of libel brought by appellant against appellee, a corporation publishing the Peoria Journal, a newspaper of general circulation. The alleged libelous matter consisted of certain publications made concerning appellant's connection as a lawyer, with a criminal case against one W. B. Davidson. There were five counts in the declaration. To the fourth and fifth the court sustained a demurrer.

The general issue was filed to the first, second and third, and a trial resulted in a verdict and judgment for appellee.

Appellant asks a reversal of the judgment for the following reasons:

1. The court erred in sustaining a demurrer to the fourth and fifth counts of the declaration. 2. The court erred in refusing to allow appellant to prove other publications than those declared on. 3. The court erred in instructing the jury. 4. The verdict is against the evidence.

It appears from the pleadings and proofs in the record that in the month of August, 1891, W. B. Davidson, accused of seducing and getting with child his step-daughter, a girl fourteen or fifteen years of age, was arrested, taken before a magistrate, and in default of bail committed to jail. He was subsequently indicted for rape, obtained a change of venue on account of the prejudice of the inhabitants of Peoria county against him, and was tried at Toulon, Stark county, in the month of March following. Appellant was retained in his defense early after the first accusation, and in connec-

tion with two other attorneys, defended him at Toulon. Intervening the time of the arrest and the trial and afterward the Peoria Journal published a number of very bitter, scathing and inflammatory articles against Davidson, the charge against him, and his efforts while in jail to procure perjured testimony in his behalf.  In some of these articles the name of appellant was mentioned, and the consistency of his appearing in defense of so bad a man as Davidson was charged with being, with his character as a temperance reformer and ardent advocate of strict morals, was animadverted upon. It is claimed that his name was so coupled with Davidson as to make it appear that he participated in the effort to procure perjured testimony; that he, by improper means, procures the acquittal of guilty persons; that he is a hypocrite in his professions of moral reform, and that as an attorney, he is so devoid of honor as to render him unworthy of employment.

This opinion would be made too lengthy by quoting in full all the publications offered in evidence.  The following is set forth in the first count of the declaration.  It is a fair sample of the others.

## " HE NEEDS 'EM.

The prayers of the good are solicited in behalf of Dan R. Sheen.  Dan needs 'em.  In fact it is just possible he does not realize this himself, but that cuts no particular figure.  It is a fact, nevertheless, and the man never lived who could take as much as a single fall out of even a feather weight fact.  That settles it by way of adding point and flavor and spice and piquancy and other condiments to the supplications.  It may be remarked that Dan is about to link arms with the saintly Davidson, now incarcerated in the county jail.  Together they will travel over into Stark county, there to stand trial and frame a defense against charges of the blackest immorality that ever coquetted under the innocent guise of a family 'cure for headache.'  Now there is no room for discussion over the row which Dan and his client are billed to hoe.  Whatever they may think of the case themselves, they can scarcely divorce their minds from the seriousness of the barricade between Davidson and lib-

erty. Dan is entitled to the prayers of the good, not only because he has a difficult angle worm act ahead of him, but because he is a moral reformer. Dan is a prohibitionist and an apostle of temperance. He is one of the very few members of the bar who refuse to participate in liquid acknowledgments, and he is about the only one sufficiently strong in his estimate of righteousness to undertake the conversion of lepers like Davidson. The fact that he is found in Davidson's corner, seconding him in his fight against law and morality and common decency is not to be misconstrued to his injury. He is the second Great Heart in the good cause of reform, and he undertakes cases that all other reformers steer clear of as past redemption. It is not on record, so far as can be determined, that Dan ever scored a success in whitewashing backsliding saints of the Davidson stripe. Indeed it may possibly appear on the books that the Supreme Court itself rapped him pretty severely over the knuckles for his charitable efforts on behalf of a similar protege. Then too, Governor Fifer, in refusing to pardon Charles McGonagle, administers an uppercut to Dan, for he engineered McGonigal's defense; but a failure to convert and redeem the sinner is not to be tallied against the Evangelist, for in all these cases Dan bit off more than he could handily masticate. How he will fare in this Davidson mess is a riddle that the future alone can solve. The damnable circumstances are not in his favor, and his client's double bottom lunch baskets, furthermore, are not calculated to help him out. Still there is a fighting chance for success. The moral sensibilities of the Stark county jury may be slugged into temporary torpor by the sledge hammer force of the reformer's logic. In any event, the outcome is anticipated with wide-spread interest by the community at large. It is by all odds the heaviest contract of a reformatory nature that Dan R. Sheen has ever undertaken."

We think the court properly sustained a demurrer to the fourth and fifth counts. The language contained in the articles set forth, when reasonably construed, does not implicate Sheen nor sustain the meaning charged by the pleader.

The publication of the articles was not denied, and the case was tried upon the theory that it was the duty of the jury to construe the language and determine whether it tended to impeach the integrity, virtue and reputation of the plaintiff and thereby expose him to public contempt and pecuniary injury. That such view of the law was taken, is evidenced by the plaintiff's own instructions. By their verdict, the jury found that the articles declared upon when taken in the ordinary acceptance of the language employed, were susceptible of an innocent construction and did not impeach the plaintiff's character for integrity or virtue, and thereby expose him to public contempt and pecuniary injury. We are not prepared to say that the construction placed upon the language employed, was so manifestly wrong as to warrant us in reversing the judgment for that reason. The general rule is, that in actions for libel and other actions vindictive in their nature, a new trial will not be granted merely because the verdict is against the evidence. Townshend on Slander, 2d Ed., 494, 495; Clark v. Hatfield, 88 Ill. 440; Jarvis v. Hatheway, 3 Johns. 180; Rundell v. Butler, 10 Wend. 119. We do not mean to intimate that the construction placed upon the articles by the jury was a strained one, but mention the rule for the purpose of showing how loth courts have been to set aside verdicts and reverse judgments rendered against plaintiffs in this character of action, merely because the verdict was against the evidence.

Appellant insists there was error of the Circuit Court in refusing to admit in evidence other articles published concerning the Davidson case than those declared on. There were ten of them published on the 22d and 24th of January, 19th of February and 15th, 17th, 21st, 22d, 23d, 25th and 27th of March, 1892, respectively. A careful examination of them shows that they were descriptive of Davidson's antecedent career, the offense charged against him, the trial, and the general opinion upon the result of not guilty, and were not intended as an attack upon appellant. We recognize the rule that in the trial of an action for libel, a repetition by the defendant of the defamatory matter complained of

is admissible to prove malice, and that within the rule the plaintiff may give in evidence other publications, being of like import to those declared upon, or explanatory of any ambiguity contained therein.

There is no question that so far as relates to Davidson, the articles are of like import with those set out in the declaration, and would be admissible in an action for libel by him. But so far as concerns Sheen they are not of like import and do not tend to indicate the motive, temper or disposition of the publisher against him. The ruling of the Circuit Court is sustained by the following authorities: 2 Starkie on Evidence, 870; Ranson v. McCurley, 140 Ill. 626; Thompson v. Powning, 15 Nev. 195.

There is another view of this alleged error which may be taken here. If the refused publications were admissible, it was only for the purpose of showing malice and increasing the plaintiff's damages. The jury found the defendant not guilty of libel in publishing any of the articles set forth in the first, second and third counts of the declaration. They did not reach the point when the consideration of the refused proof, if admitted, would have been material.

The rule is that the exclusion of proper evidence is not reversible error, where it appears that if admitted it would not have benefited the party offering it.

Appellant has no just cause of complaint against the instructions given for appellee. They are in harmony with those offered by him and given by the court.

The judgment will be affirmed.