Prentiss *v.* Shaw.

⸻◆⸻

GEORGE W. PRENTISS *versus* ELISHA W. SHAW *& als.*

The plaintiff was unlawfully seized by the defendants, carried thence three miles, and confined in a room several hours, and thence to a town meeting, where he took an oath to support the constitution of the United States, and was discharged. In the trial of an action of trespass, based upon these facts, the plaintiff claimed, (1,) actual damages resulting from his seizure and detention, (2,) damages for the indignity thereby suffered, and, (3,) punitive damages; — *Held,*

1. That the plaintiff was entitled to recover full pecuniary indemnity for the actual corporeal injury received, and for the actual damages directly resulting therefrom, such as loss of time, expense of cure and the like;

2. That the declarations of the plaintiff, made prior to the unlawful arrest and tending to provoke the same, not being a legal justification thereof, are inadmissible in mitigation of the actual damages; but,

3. That such declarations made on the same day, and communicated to the defendants prior to such arrest, together with all the facts and circumstances fairly and clearly connected with the arrest, indicative of the motives, provocations and conduct of both parties, are admissible upon the question of damages claimed upon the other two grounds.

ON EXCEPTIONS.

The writ was dated June 15, 1867, and contained a declaration in

TRESPASS, substantially alleging that, Elisha W. Shaw, (a deputy sheriff,) Putnam Wilson, Jr., Oliver B. Rowe, Hollis J. Rowe and Daniel Dudley, on the 15th April, 1865, at Newport, with force and arms, assaulted, beat and bruised the plaintiff, thereby permanently injuring his hip and back, violently forcing him into and locking him in a room in the Shaw House, subjecting him to remain there five hours, violently taking from thence into a carriage and carrying him against his will to the town-house in Newport.

The plaintiff introduced evidence tending to show, that, in April, 1865, while he was at a blacksmith's shop in Newport, where he was having his horses shod, Shaw, Dudley, Wilson and H. J. Rowe seized him and, forcibly putting him into a wagon, transported him a prisoner three miles distant, to Newport village, and confined him for several hours in a room in the hotel there; that a crowd of men accompanied the four defendants to the shop and from thence to Newport village; that the four defendants inflicted injuries upon the person of the plaintiff; and that threats of extreme personal injuries were made to the plaintiff, both at the blacksmith shop and at Newport village, by some persons.

There was conflicting testimony as to the extent of the injuries to the plaintiff's person.

The defendants, against the seasonable objections of the plaintiff, introduced evidence tending to show that the four defendants seized the plaintiff in the forenoon of the day on which the news of the assassination of President Lincoln was received; that, when the plaintiff stepped into the blacksmith shop, he, addressing one Gilman, (who was a witness in this case) said:—"He that draweth the sword shall perish by the sword, and their joy shall be turned into mourning;" that Gilman (alluding to the assassination of the President,) said to the plaintiff:—"I suppose there are some who are glad of it;" that the plaintiff thereupon replied:—"Yes; I am glad of it; and there are fifty more in town who would say so, if they dared to;" that Gilman rejoined that the plaintiff would be glad to take those words

Prentiss *v.* Shaw.

back; that the plaintiff responded, substantially, that he would not; and that Gilman thereupon informed the plaintiff he should report him.

On cross-examination, Gilman testified that he thought that the plaintiff, when speaking of the assassination, said it might stop the further effusion of blood.

Against the seasonable objections of the plaintiff, the defendants also introduced evidence tending to prove that the blacksmith shop was three miles from Newport village, where three of the defendants were; that Gilman, in about twenty minutes after his conversation with the plaintiff, told it to the defendant Wilson; that Gilman and Wilson went to Newport village and informed the four defendants of the plaintiff's declarations concerning the assassination; that, about two hours afterwards, the four defendants proceeded to the blacksmith shop and did the act proved by the plaintiff; that there was great excitement in the public mind upon the receipt of the news of the assassination.

The plaintiff seasonably objected to the admission of the alleged declarations of the plaintiff, made to Gilman that day; but the presiding Judge ruled that the plaintiff's declarations made that day, concerning the assassination of the President, might be given in evidence *de bene esse,* it having been stated by the defendants' counsel that they should prove the same had been communicated to the defendants before their arrest of the plaintiff.

Against the seasonable objections of the plaintiff, the defendants also introduced evidence tending to prove that, after the confinement of the plaintiff in the hotel, he was taken by them, on the same day, to a public meeting of the citizens, called at the town-house, at which a moderator and clerk were chosen, and acted officially; that, at the meeting, a vote was passed that the plaintiff be discharged upon his taking an oath to support the constitution of the United States; and that the plaintiff voluntarily took such oath and was thereupon discharged.

The defendants also introduced evidence tending to show,

that, before arresting the plaintiff, telegraphic communication, relative to the plaintiff's declarations concerning the assassination, was had with the provost marshal at Bangor, who replied by telegraph, that he should be arrested and held; that thereupon the defendant Shaw, then an acting deputy sheriff, with three other defendants, acting under his orders, proceeded to make the arrest; and that they honestly believed that they had a legal right to do what they did, and had no malice towards the plaintiff.

As to the four defendants proved to have been present, (and the other, if found to have participated,) the presiding Judge instructed the jury that the defendants had shown no legal justification for their acts, and must be found guilty; that the only question for the jury was the amount of damages; that the plaintiff claims damages on three grounds;—

1. For the actual injury to his person and for his detention;

2. For the injury to his feelings, the indignity, and the public exposure; and,

3. For punitive or exemplary damages.

That they were bound to give, at all events, damages to the full extent for the injuries to the plaintiff's person and for his detention.

That, as to damages for the second and third grounds, it was for the jury to determine, on the whole evidence, whether any should be allowed, and the amount.

The presiding Judge explained to the jury the nature and grounds of such damage, and instructed them, inter alia, that they could only consider the evidence introduced by the defendants under the second and third heads above set forth, and in mitigation of any damages they might find under either or both of said heads, if, in their judgment, those facts did mitigate such damages; but that they could not consider them under the first head.

There was other testimony introduced by both sides, and other instructions given by the presiding Judge.

The jury acquitted O. B. Rowe, and found a verdict of

guilty against the other defendants, and assessed damages in the sum of $6,46. Whereupon the plaintiff alleged exceptions.

*W. H. McCrillis*, for the plaintiff, contended, *inter alia*, that the language of the plaintiff was not a sufficient provocation. It was not personal to any of the defendants. *Corning* v. *Corning*, 2 Selden, 97; *Ellsworth* v. *Thompson*, 13 Wend., 658.

Sufficient provocation cannot be proved in mitigation when the assault and battery were deliberately committed. The assault must accompany the provocation before the blood has time to cool. The question is, was there time for a reasonable man to reflect, and not whether the defendants continued in a state of passion. *Cope* v. *Sullivan*, 3 Selden, 400; *Avery* v. *Ray*, 1 Mass., 11; *Lee* v. *Woolsey*, 19 Johns., 319; *Willis* v. *Forrest*, 2 Duer, 318.

Words cannot constitute justification. Words can never be sufficient provocation. They may provoke extreme anger, and the anger be admitted in mitigation. But, if the blood has time to cool, the assault is regarded as deliberately done and cannot be mitigated. Any other rule would be subversive of the order of society.

*L. Barker*, for the defendants.

KENT, J.—The case, as presented to the jury under the rulings was, in substance and effect, one where a default had been entered and an inquisition of damages had been allowed before a jury. The jury had no discretion allowed to them, except as to the amount of damages, to be inserted in a verdict for the plaintiff. The main question is whether the directions given by the Judge to the jury to govern them in the assessment of damages were correct.

The plaintiff claimed damages for several distinct matters, and asked that the jury should found their verdict on these principles, viz.:—

1. The actual injury to his person and for the detention and imprisonment.

2. For the injury to his feelings, the indignity and public exposure and contumely.

3. For punitive, or exemplary damages in the nature of punishment, and as a warning to others not to offend in like manner.

The Judge very unequivocally instructed the jury that the defendants had shown no legal justification for their acts, and must be found guilty, and that the only question for them was the amount of damages, — that they were bound to give damages at all events for the injuries to the plaintiff's person, and for detention, to the full extent of said damages; that they could not consider the testimony put in by defendants in mitigation of such actual damages, but must give a verdict for matters named under the first head to the full amount proved, without diminution, on account of any matters of provocation, or in extenuation.

The Judge further instructed the jury, that they might consider the testimony put in by defendants under the second and third heads, above stated, in mitigation of any damages they might find the plaintiff had sustained under either or both of said grounds.

These rulings present the question whether the evidence objected to was admissible for the special purpose to which it was confined. It was not in the case generally, but its consideration and application was restricted to the special grounds of damages set up, beyond what may properly be termed the actual damages. It was entirely excluded as a justification, or as mitigating in any degree the actual damages.

The distinctive points of the rulings, which perhaps distinguish them from some cases in the reports, and some doctrines in the text books, are, first, that they exclude entirely this species of evidence, in mitigation of actual damages, — and, secondly, that they admit it, in mitigation of damages, claimed on the other grounds of injury to the feelings, indignity, and punitive damages, although the evidence related to matters, which did not transpire at the instant of

the assault, but on the same day, and manifestly connected directly with the infliction of the injury complained of.

It is unquestionable that many authorities can be found which seem to negative the proposition that acts or words of provocation, except those done or uttered at the moment, or immediately connected in time with the infliction of the injury, can be given in evidence in mitigation of damages. But most of these cases seem to be predicated upon the idea of mitigation of the actual, positive, visible damages, — those damages to which the party would be entitled on account of the actual injury to his person or his property.

It is important to settle, as well as we can, the general principle which lies at the foundation of the law applicable to damages, occasioned by the illegal acts of the defendant. We understand that rule to be this, — a party shall recover, as a pecuniary recompense, the amount of money which shall be a remuneration, as near as may be, for the actual, tangible and immediate result, injury, or consequence of the trespass to his person or property. But, in the application of this general principle, there has been great diversity in the decisions, and in the doctrines to be found in the text books touching the point of mitigation or extenuation.

In reference to injuries to the person, it was soon seen that this literal and limited rule, if applied inexorably, would fail to do justice. The case is at once suggested, where an assault and battery is shown to have been wanton, unprovoked, and grossly insulting; inflicted clearly for the purpose of disgracing the recipient, and at such a time or place as would give publicity to the act, and yet the actual injury to the person very slight, or hardly appreciable. Shall the law, in such a case of wanton insult and injury, give only the damages to the face or the person, as testified to by a surgeon?

On the other hand, a case is suggested, where the injury to the person was severe, a broken limb or grievous wounds, or permanent or partial disability, and yet the party suffering had been guilty of gross abuse, provoking the assault

by insulting language or false accusations, or most offensive libels upon the defendant or his family, or had outraged the community in which he lived, by a series of acts or declarations which justly aroused and kept alive the indignation, which at last found vent in the infliction of some personal indignity, accompanied by force and violence, which resulted in the serious manner above stated. What is the rule as to such damages, applied to the aggravations in the one case, and the mitigations in the other?

If we take the case of such an assault, which has been provoked by words or acts at the time of the trespass, and so immediately connected therewith that all authorities would agree in admitting the evidence in mitigation, the precise question, then is, for what purpose can it be used, and what damages can it mitigate?

All agree that these facts cannot be a legal justification, and be used in bar of the action. The plaintiff is undoubtedly entitled to a verdict, with damages. It is said these facts may be used to mitigate the damages. But what damages? If the assault was illegal and unjustified, why is not the plaintiff, in such case, entitled to the benefit of the general rule, before stated—that a party guilty of an illegal trespass on another's person or property, must pay all the damages to such person or property, directly and actually resulting from the illegal act? Admit that the defendant was provoked, insulted, irritated and justly indignant at the acts or language of the plaintiff. If those provocations did not reach the point of a legal justification of the assault, then, so far as the question arises for which party the verdict shall be given, they are immaterial, and out of the case. The assault was wholly legal or wholly illegal. There can be no such thing as apportioning the guilt; making the act half legal and half illegal. It is not one of the class of cases where the suffering party contributed to the injury, and thereby lost his right of action. The contribution, to work that effect, must be coöperation in the doing of the

act itself, which is complained of, — i. e., the assault and battery; or whatever the alleged specific act may be.

If, then, the act is confessedly an illegal one, and unjustified in law, why must not the defendant answer for and pay the actual damages to the person? On what principle of law can he be exonerated?

In the case before us, the presiding Judge took this view. He made a distinction, which has not often been attended to, between a recovery for the actual personal damage, and loss of time and other direct injuries, and a recovery for other damages based on injury to the feelings, indignity, insults and the like, and also on the claim for punitive damages.

Is there not such a distinction in law and common sense? Take the simple case of the meeting of two men in a public street. One addresses the other with opprobrious and insulting language, calling him a thief or a liar. The other, at the moment, naturally excited to almost uncontrollable anger, strikes a blow which breaks the arm of his antagonist. The law says the words were no legal justification for the blow. It was therefore a trespass and a wrong. What damages shall be awarded? Can they be more or less, according to the provocation on one side, or the natural anger on the other? There is the broken arm, neither more nor less, with the pain and suffering and expense of cure, and the loss of time, all which are open and appreciable, and are the direct and immediate consequences of the legal wrong. If the law holds, as it does, sternly and unwaveringly, that the words are no excuse or justification, why should it " keep the word of promise to the ear but break it to the hope," by allowing a jury to evade the law, whilst, in form, keeping it, by a verdict for nominal damages, which is in effect one in favor of the defendant? Why not say, rather, that the provocation might be shown in defence of the action, and that, if the plaintiff morally deserved to suffer the injury, by reason of his language, that should be a legal excuse? It seems to be a legal anomaly to say, true, it is an

undefended, naked trespass and wrong, but no real damages or recompense shall be given. It is giving the benefit of a justification to what the law expressly says is no justification. The restriction of the rule to the provocation given at the time of the assault, does not obviate the objection, that it is against a well settled principle, which gives real and substantial redress for every unjustified trespass. Where the trespass or injury is upon personal or real property, it would be a novelty to hear a claim for reduction of the actual injury based on the ground of provocation by words. If, instead of the owner's arm, the assailant had broken his horse's leg, in the case before stated, must not the defendant be held to pay the full value of the horse thus rendered useless? Or, in case of trespass on land, can the actual damage be mitigated by showing that it was provoked by unfriendly or unneighborly words? Or, in case of a damage at sea, could an intentional and unnecessary collision be mitigated, so far as the actual injury was in question, by proving that the navigator was insulted and irritated by taunting and exciting language from the deck of the injured vessel?

But there is no doubt that the law has sanctioned, by a long series of decisions, the admission of evidence tending to show, on one side aggravation, and on the other mitigation of the damages claimed. Verdicts for heavy damages have been sustained, where the actual injury to the person was very slight or merely constructive, and other verdicts, for merely nominal damages, have been confirmed, where the actual injuries were shown to have been serious. In the first class of such cases, the plaintiff has not been restricted to proof of the injury to the person, but has been allowed to show the circumstances attending the act, and to have damages for the insult, indignity, injury to his feelings, and for the wanton malice and unprovoked malignity of the deed. And it is now settled, certainly in this State, that he may be allowed, in addition, exemplary damages in the way of punishment or warning to the transgressor and others.

Now this opens a wide field for uncertain or speculative damages for matters not tangible or susceptible of accurate estimation, but based upon principles and considerations different from those which determine the actual injuries as before described. These are such as lie patent, and require only a calculation of time lost, pain suffered, or the value of a permanently injured limb, or the like. But when the injury to the feelings, the insult, the mortification, the wounded .pride, or, to sum up all in one word, the indignity, are pressed as grounds for pecuniary indemnity, superadded to the claim for punitive and exemplary damages, they evidently and necessarily require a consideration of all the facts in any way clearly and fairly connected with the trespass, and bearing upon the motives, provocations, and conduct of both parties in the controversy, which has culminated in an assault by one upon the other. How otherwise can a jury fairly estimate what should be awarded by way of punishment, or as a reasonable satisfaction for injured feelings? These damages, as our law now stands, are made up of injuries partly private and partly public in their nature. If evidence of this nature, admitted to enhance the actual damages to the person, may be given, why should not the same kind of evidence be given by way of mitigation of damages claimed on such grounds?

If the plaintiff restricts himself distinctly to the single claim for the actual damages to his person, and the direct, tangible results therefrom, and expressly waives all claim beyond, it would seem that the defendant should be limited to matters strictly in defence or justification of his act, as in other cases of trespass. But if, as in this case, he claims beyond this, for injured feelings and for punishment, the question arises, (which is the main question made by the plaintiff,) what is the limit of the evidence which may be admitted in mitigation or extenuation? It is not denied that some evidence of this nature is admissible. The precise question is whether it is to be confined to what transpired at the time of, or in immediate connection with the

act. If a party claims damages not merely for the naked assault, but for his wounded feelings, and seeks to inflame them by showing that he had been publicly insulted by opprobrious language used with the evident intent to degrade him in the eyes of his fellow citizens, may not the defendant be allowed to show that the complainant had himself been guilty of using like words, or by his conduct and by insults and provocations had really been the cause of the assault? The plaintiff may have been passive and silent at the moment of the assault, whilst the defendant was violent and denunciatory, and, if no facts can be shown beyond those transpiring at that meeting, the plaintiff would present a case, apparently calling for exemplary damages, whilst, if the whole truth was brought out, the defendant would appear the least in fault, so far as regards provocation.

And so, if the plaintiff claims for damages of this nature, for an assault, not by a personal enemy, but by those whose indignation had been aroused in matters of a general and public nature, may not all damages, beyond those actually suffered in his person, be modified or affected by evidence of his acts or declarations, calculated to arouse a just indignation and disgust? Why should the man who has intentionally and grossly outraged decency, or aroused indignation by his violation of common humanity, be allowed to recover for his injured feelings, and the public degradation to which he has been subjected? Or rather, why should not a jury be allowed to know all the facts, directly connected with the act, although not transpiring at the moment, and from them determine, whether any, and if any, what damages should be allowed beyond the actual injury to the person or property. If facts beyond the act are to be allowed to aggravate, why should not like facts be allowed to mitigate this class of damages? If, for instance, a man, had been guilty of frequent, indecent exposures of his person in public streets, accompanied by obscene language and gross insults to females, and had persisted in such a course, until

a body of his townsmen, indignant and outraged, seized him and inflicted punishment, and carried him away and confined him for a day, or other like proceedings; and for this assault and battery and imprisonment an action is brought and a claim set up for recompense for injured feelings, indignity and for punitive damages. At the trial, he proves these acts, — rough handling, and degrading treatment, and personal imprisonment, and makes out a case of apparently inexcusable interference with his liberty and his person, and his sense of self-respect. The defendants cannot show that he did or said anything at the time of the arrest. But are they to be precluded from showing anything in mitigation of such a claim? The law is fully vindicated when it gives such a man his full, actual damages. When he asks for more, he opens a new ground for his opponent, who may well say you have no fair claim for damages on this ground, for your own conduct and language aroused the indignation which led to the acts complained of.

There is an instinct, or, if not quite that, a dictate of common sense, which it is neither wise, or hardly possible for the law to disregard, — that a man should not have pecuniary recompense for injured feelings or public degradation, when he has himself outraged the feelings of another, or so conducted as justly to excite public odium by open contempt of the decencies of life. The old legal requirement, that he that asks for redress " must come into Court with clean hands," at once occurs to us. The law will protect the hand from actual violence upon it, although it may sadly need ablution, but beyond this will require " a show of hands" before it will adjudge damages for an alleged defilement.

The ruling of the Judge, in this case, was preremptory and unqualified, that the evidence made out no legal defence, and that the verdict must be for the plaintiff " to the full extent of the damages sustained by the injuries to the plaintiff's person, and for detention."

If, after this ruling, the defendant had consented to a default, and the case had come before a Judge to determine the damages, and the same claim for cumulative and exemplary damages had been made and pressed, would any Judge have excluded, in the hearing before him, the evidence offered in this case? If he had, how could he determine the degrees of aggravation or extenuation, or come to any satisfactory conclusion on the matter of damages? As before said, the jury in this case were in the same condition, after the ruling, as a Judge would have been after default.

When we consider the nature and the grounds of this claim for exemplary or punitive damages, it is difficult to see why the evidence of provocation or mitigation, if allowed at all, should be restricted to the time of the overt act. What happened then may, and generally would, give a very partial and insufficient view of all the circumstances which in truth belong to the matter in question, and serve to aggravate or diminish the injury to the feelings, or the malice of the act. Every one sees this at a glance.

We think it will be found, on a careful examination of the cases, that where this rule, limiting the evidence to what transpired at the moment, has been enforced, the claim was to diminish the damages for the actual corporeal injury and loss of time, and no distinction was made between those and exemplary damages. The reasoning to be found in this class of cases is very similar to that found in the decisions at common law, where the degree of guilt is lessened, and a different and distinct offence, of a less degree, is found by reason of proof of sudden and provoked anger; as where a homicide is reduced from murder to manslaughter. But, in such trials, these matters of provocation and sudden anger are introduced, not to mitigate a crime found or admitted, but are strictly matters in defence, and modify or give character to the act, in determining what crime has been in fact committed, and are used for that purpose. In such case it becomes important to know whether the act was the result of sudden passion, or whether there had been time

Prentiss *v.* Shaw.

for the passions to cool. But in a civil action for trespass the liability of the party for actual damages does not depend upon the intent or state of mind of the trespasser. He may be liable, if his act was unlawful, although he did not intend to injure any one, and had no anger or ill-will towards the party whose person or property was affected by his illegal act. It is not the motive, or the feelings under which the legal wrong is committed, which determines the character of the act, or the amount of the actual damages resulting from it. It cannot be excused, if legally unjustified, by proof of sudden passion, or the absence of malice or wrong intent.

The analogy, if any, between civil actions and criminal prosecutions, is to be found in the determination of the extent of punishment in the one, and the amount of exemplary or cumulative damages in the other. Although in the trial of criminal cases the evidence may be limited to the time of the occurrence, yet every Judge is aware that, in fixing upon the sentence to be awarded, he does not hesitate to hear evidence or statements as to facts and acts and declarations made or done anterior to such time — in order to ascertain, as well as he can, the mitigating or aggravating circumstances connected with the offence. So, in determining the amount of damages in a civil suit, beyond the tangible, as before explained — when there is no question as to the fact that a trespass had been committed, a limitation of the examination into what transpired at the moment would seem to fall far short of what reason and common sense would prescribe. It seems hardly just to require any tribunal to act and determine such questions, and to award damages in the nature of punishment, and withhold from it all knowledge of the facts which may fairly be said to give the moral character of the act, and the actual guilt of the respondent.

We are aware that great care must be taken to confine the examination to such matters as are clearly and directly connected with the acts, or give color or character to it. Mere evidence of general bad character,— or unpopularity, or of

acts or declarations of ancient date, or not clearly and really part and parcel of the matter in question, must be excluded. But time is not of the essence of the principle, but fairly established direct connection, as cause or effect. It is impossible to accurately define the limits, so as to reach every case. But there can be no greater difficulty in the application of this than of many other rules of law.

In the case at bar, the evidence was limited to the transactions of the day on which the assault was committed, and very evidently was of matters connected directly with the acts done. If it had been excluded, after the evidence on the part of the plaintiff had been heard, how could the jury have properly or understandingly determined what punitive damages should be given in vindication of outraged law, or for the indignity and injury to the feelings? They had a right to know, and the defendants had a right to place before them the true relations of the parties, and to show how far the act was wanton, malicious, vindictive or unprovoked, or how far extenuated by the conduct, declarations or provocations of the complaining party.

On the whole, after a full consideration of the case, and the cases, we think that the rulings of the Judge were not erroneous, but give the rules on this subject which are practical, and in accordance with common sense and the general principles of the law.            *Exceptions overruled.*

CUTTING, DICKERSON, BARROWS and TAPLEY, JJ., concurred.