## LE LAURIN *v.* MURRAY.

## Opinion delivered April 29, 1905.

1. ASSAULT AND BATTERY—LIABILITY.—The mere fact that the two defendants went to plaintiff's place of business together, and that, after plaintiff had been assailed by one of them, a second assault was inflicted by the other, does not render the first assailant liable for the damage inflicted by the second, if he neither knew of nor consented to the second assault. (Page 236.)

2. SAME—REDUCTION OF DAMAGES—ABUSIVE LANGUAGE.—While mere words do not justify an assault, they may go in mitigation of exemplary damages growing out of an assault provoked by them, provided they were uttered at the time of the assault or so recently before that the provocation and the assault may be considered as parts of the same transaction. (Page 238.)

3. SAME.—The fact that defamatory language used by plaintiff concerning defendant some weeks or months before the assault complained of was committed was reported to defendant by another an hour or so before the assault did not render it admissible in evidence in mitigation of damages, if the language had been previously reported to defendant, so that cooling time had intervened before the assault. (Page 238.)

4. SAME—ABUSIVE LANGUAGE—ADMISSIBLE WHEN.—Where the evidence of offensive language used by plaintiff concerning one of the defendants several weeks before the assault of plaintiff by defendants was committed was admissible to explain what took place at the time of the assault, the judge should have cautioned the jury not to consider such language as in justification of the assault, and that it could not be considered, even in mitigation of damages, unless there was a repetition of it at the time of the assault. (Page 238.)

5. SAME—REDUCTION OF DAMAGES.—Provocation, even if given at the time of an assault, cannot reduce the damages below adequate compensation for the injuries actually suffered by the person assailed. (Page 239.)

Judgment affirmed.

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Reversed.

STATEMENT BY THE COURT.

A. A. Le Laurin and Arthur Murray were both members of
the Elks Lodge at Pine Bluff.   Some differences arising between
them, Murray made charges which resulted in Le Laurin severing
his connection with the lodge.   Le Laurin became angry at
Murray, and at different times during several years in speaking
of him applied to him very obscene and offensive epithets.
Murray heard reports of Le Laurin having applied such epithets
to him, but he paid no attention to them.   But early on the morn-
ing of August 30, 1901, he met one E. A. Peterson in a saloon,
and Peterson informed him that Le Laurin had not only used
such language, but that he had stated to him that he had applied
it to Murray in his own presence in Cincinnati, and that he
did not resent it.   Murray then said he would see Le Laurin,
and make him retract the language, and Peterson offered to
show him where he could find Le Laurin.   They then went to Le
Laurin's shop, where he made boilers, and did other work in
that line.   After some minutes Le Laurin came along, and Peter-
son accosted him, and told him that he had brought Murray
there to see if he, Le Laurin, would repeat the language to his
face.   Le Laurin asked, "What concern is that of yours?" and
Peterson made some remark in reply.   Murray then appproached
Le Laurin, and asked him "if he said it."   He replied that he
did, and Murray hit him with his fist.   They commenced to fight,
and the  result was that Le Laurin threw Murray down, and fell
on him, and was striking him.   Thereupon Peterson drew  a
pistol, struck Le Laurin several heavy blows on the head with it,
and pulled him off of Murray.   Murray got up, and he and Peter-
son left, and went away together.   The injuries inflicted by
Murray on Le Laurin were not great, and probably not so
severe as those he gave Murray.   But the blows struck by Peter-
son with the pistol caused severe injuries, from which the blood
flowed freely, so that Le Laurin's face and neck was covered with
it, insomuch that he could scarcely see.

Both Le Laurin and Murray testified that the assault made
by Peterson was unexpected, as he was a neighbor of Le Laurin,
and considered by him up to that time to be his friend.   Murray
testified that, on the way from the saloon to Le Laurin's shop,
he told Peterson that he did not want him to interfere in any

way, but stated to Peterson that, if Le Laurin would not retract, he intended to fight, and that, if "he didn't get the best of it," he would "get the worst of it." Murray further testified that he did not see Peterson strike Le Laurin, and did not know that he had done so until told by Peterson after the fight was over. Peterson corroborated this statement of Murray that he asked him not to take any part in the difficulty, if any resulted. Peterson's testimony tends to show that he was somewhat under the influence of liquor, and struck Le Laurin under the influence of a sudden impulse on seeing him upon Murray striking him.

On the trial the court refused the following instruction requested by plaintiff:

"The court instructs that you will not consider any violent or abusive language used by the plaintiff against the defendant in mitigation of the damage, which was used by the plaintiff more than a few days before the assault; and you are instructed that if you find from the evidence that the plaintiff did use violent, insulting or abusive language about the defendant several days prior to the assault complained of in this case, you will not consider such language in mitigation of the amount that plaintiff has shown he has been damaged by the assault."

The court in instructing the jury gave the following instruction over the objection of plaintiff:

"There being no dispute or conflict in the testimony in this case as to the fact that the defendant Murray committed an assault and battery upon the person of the plaintiff, Le Laurin, the plaintiff is entitled to verdict against the defendant Murray for some amount as damages, either nominal, actual, compensatory or punitive, or two or more of these combined. The only question for you to determine is as to what the amount shall be, and what elements it shall embrace. If you find that the assault made by Murray was willful, wanton and without reasonable excuse or provocation, then you shall award to the plaintiff, not only such actual and compensatory damages as he may be shown by the proof to have sustained, but also such punitive damages as in your judgment the circumstances of the assault will justify.

"But if you find from the evidence that prior to the assault the plaintiff had publicly and repeatedly used of and concerning the defendant Murray abusive and slanderous language, amounting to a charge of gross obscenity and lewdness and cowardice, and which words were of such a character as would naturally tend to arouse the passions and excite the anger of any ordinary man, and that the language was communicated by Peterson to Murray on the morning of the assault, and so recently before that event that the passion excited by it had not time to cool, then such words so used by the plaintiff may be considered by the jury in mitigation of any damages which you may find that the plaintiff is entitled to recover from the defendant Murray for the assault committed by him."

"Each of the defendants in this case is liable to the plaintiff in some amount; but the fact that they went to Le Laurin's place of business together does not itself necessarily make them jointly liable for the acts of each other, although it is a circumstance which should be considered by the jury in determining what their intentions were. In order to make them jointly liable, the burden is upon the plaintiff to show, by a preponderance of the evidence, that, in making the assault upon the plaintiff, the defendants acted together in pursuance of a mutual understanding or agreement, either expressed or implied, or in pursuance of a then present common design and purpose to do an unlawful act.

"If Peterson and Murray had no previous understanding or design to attack and assault the plaintiff, and went to the plaintiff's place of business, and Murray demanded of Le Laurin the retraction of certain language said to have been used about Murray by Le Laurin, and upon Le Laurin's refusal to retract the same, Murray, being provoked by such refusal or reiteration of the language, assaulted the plaintiff, and afterwards, without the knowledge of Murray or previous design or understanding what he should do, Peterson joined in the assault, and beat and damaged the plaintiff, then defendant Murray would not be responsible for such damage inflicted by Peterson."

The jury returned a verdict in favor of plaintiff, and assessed the damages against Murray and Peterson jointly at $1, and against Peterson in the further sum of $250.

Plaintiff appealed.

*White & Altheimer,* for appellant.

Evidence of a previous provocation is not admissible. 2 Green. Ev. § 93; 4 L. R. A. 500; 17 Ia. 468; 26 L. R. A. 220; Sedg. Dam. § 384, 487; 2 Am. & Eng. Enc. Law, 998; 3 Cyc. 1098; 35 Ark. 492. Instructions numbered 5 and 7 were erroneous. 69 Ark. 375; 15 Ark. 452; Sedg. Dam. § 1279; 41 Ark. 295; 61 Ark. 446.

*J. G. Taylor* and *Taylor & Jones,* for appellee.

The objections to testimony were not properly made. 62 Ark: 203; 16 Ark. 271; 24 Ark. 620. In actions of tort the questions of damages are left largely to the discretion of the jury. 2 Sedg. Dam. § 481; Bouvier's Dict. 102. A judgment right upon the whole record will not be reversed. 44 Ark. 556; 19 Ark. 677; 43 Ark. 296; 46 Ark. 542.

RIDDICK, J., (after stating the facts.) This is an appeal by the plaintiff from a judgment rendered in an action brought by him against the defendants to recover damages for an assault and battery committed on him.

There was evidence tending to show that the assault and battery committed by Peterson on Le Laurin at the time he and Murray were fighting was done without the knowledge or consent of Murray. We think this evidence was competent, and the weight to be attached to it was a matter for the jury. The court, in our opinion, was correct in telling the jury that Murray was not liable for acts of Peterson done without his knowledge or consent. The fact that Peterson was present with Murray, and that he did join in the assault on Le Laurin, tends very strongly to show that Murray was aided in this assault by Peterson, and that he and Peterson were acting in concert; but, as we have shown, there was evidence to the contrary sufficient to go to the jury.

But the indecent epithets which were used by Le Laurin concerning Murray were not used by Le Laurin on the day of the assault nor shortly before. It had been some weeks, or even

months, since they had been repeated by him.    Murray had heard of such remarks before, and when they were repeated to him that morning by Peterson it was not the first time he had heard of them, though he had not heard before that Le Laurin claimed to have repeated such words in his presence.    But Le Laurin, while he admitted having used the epithets in speaking of Murray, positively denied that he had ever stated to Peterson or to any one else that he had applied them to Murray in his own presence.    And it is not unreasonable to believe that Peterson added this statement in order to arouse the passions of Murray, and cause him to attack Le Laurin; for the evidence shows clearly that Peterson was much more to blame than Murray for this assault on Le Laurin.    Up to the time of this conversation with Peterson, Murray had kept his passions under control, and had demeaned himself about this matter in every respect as a good citizen should do, even though greatly provoked.    He allowed to pass unnoticed epithets spoken about him by Le Laurin behind his back.    To this language, which was of such a loathsome and revolting nature as reflected much more on the one who used it than on him of whom it was spoken, Murray made no reply, but, as it was not spoken in his presence, he treated it with the contempt of silence which it deserved.    But Peterson evidently desired to bring about a meeting between the two, and so when he met Murray he repeated to him this language which Le Laurin had spoken about Murray some weeks before, and of which Murray had heard; and, in order to force Murray to resent it, he adds to it some other remarks which he said were used by Le Laurin, to the effect that he had applied these epithets to Murray in his own presence, and that Murray had not resented them.

But, even if we admit that Le Laurin did make the additional remarks which Peterson reported to Murray, they had been made several weeks before.    Le Laurin was not present when the language was reported to Murray by Peterson.    After this Murray and Peterson went from the saloon where the information was given to the shop where Le Laurin worked, and waited some minutes for him to arrive.    The assault on Le Laurin was made nearly, if not quite, an hour after Peterson had the talk with Murray.

Now, it is a well settled rule of law that mere words never justify an assault, though, when they are such as to naturally arouse the resentment of those to whom they are addressed, they may go in mitigation of damages resulting from an assault provoked by them; but to do this they must have been uttered at the time of the assault, or so recently before that the provocation and the assault may be considered as parts of the same transaction. If sufficient time has intervened for reflection, and for reason to regain control, words, however provocative, do not in law mitigate such damages, for only provocation that is so recent as not to allow cooling time is competent to mitigate damages; and even then such mitigation extends only to exemplary damages. Damages for pecuniary losses actually sustained from a wrongful assault can never be mitigated below adequate compensation. *Ward* v. *Blackwood,* 41 Ark. 295; *Godsmith* v. *Joy,* 61 Vermont, 488; *Prentiss* v. *Shaw,* 56 Me. 427; *Millard* v. *Truax,* 84 Mich. 517; Hale on Torts, 262.

Provocation, so recent and immediate as to induce a presumption that the violence done was committed under the immediate and continuing influence of the feelings and passions excited thereby, may be shown in mitigation of damages. *Mowry* v. *Smith,* 91 Mass. (9 Allen), 67; *Millard* v. *Truax,* 84 Mich. 517; 3 Cyc. 1096.

But, as we have before stated, this provocation occurred some weeks or months before the assault, and the mere fact that the language used by Le Laurin was repeated by Peterson to Murray an hour or so before the assault does not bring it within the rule, for there was but little of it that Murray had not heard before. Had Le Laurin repeated his former statements about Murray on the day of the assault, this renewal of an old slander would have been a double provocation; but he is not responsible for the fresh repetition by Peterson. 3 Cyc. 1098.

While we are of the opinion that the court erred in telling the jury, as he did in the last paragraph of the fourth instruction given by him, that these remarks made by Le Laurin weeks before the assault might under certain circumstances be considered by them in the mitigation of damages, yet we think that, under the peculiar facts of this case, it was proper to allow the

defendants to show that epithets and offensive words had been used by Le Laurin in speaking of Murray and the nature of such language, in order that the jury might understand the meaning of the words used by these parties at the time of and immediately before the assault. This was necessary in order for the jury to decide correctly whether Le Laurin intended to make a repetition of the charge against Murray at the time of the assault. If he did this, and thereby provoked the assault, the language would go in mitigation of the damages, except such as were strictly compensatory. But, though it was proper for this purpose to give in evidence the nature of the offensive language spoken by Le Laurin about Murray, the court should have cautioned the jury that such evidence was admitted only as explanatory of the language used at the time of the assault, and that, having been spoken days and weeks beforehand, it could not be considered, even in mitigation of damages, unless there was a repetition at the time of the assault. He should also have told them that provocation, even if given at the time of the assault, could not under any circumstances reduce the verdict below the damages actually suffered by plaintiff at the hands of the defendant.

It does not appear that Le Laurin suffered to any great extent from any blow given by Murray in person; and, as the jury evidently found that he did not authorize or consent to the assault by Peterson, if there had been no error in the instructions, we should affirm the judgment, notwithstanding the damages assessed are extremely small.

But we are of the opinion that the charge of the court, while clearly stated and admirable in many respects, and although, abstractly considered, it states the law correctly, yet, under the facts of the case, it is to some extent misleading on the points to which we have called attention. The judgment will therefore be reversed, and the cause remanded for a new trial as to Murray.