COLLIER *v.* THOMPSON.

Opinion delivered December 23, 1929.

696

*James B. McDonough, G. O. Patterson* and *Cravens & Cravens,* for appellant.

*Pryor, Miles & Pryor* and *Jesse Reynolds,* for appellee.

Smith, J. Appellant, H. W. Collier, filed a complaint against W. W. Thompson, in which he prayed judgment for damages, both compensatory and punitive,

on account of an assault made upon him by Thompson. An answer was filed by Thompson, in which he alleged that he had been slandered by the plaintiff, and a cross-complaint was filed against Collier in which Thompson prayed damages on that account. W. F. Collier, the father, and Linnie D. Collier, the sister, of the plaintiff, were made defendants in this cross-complaint, upon the allegation that they had conspired with the plaintiff and had advised and encouraged him to utter the slander, and had assisted him to promulgate it in various ways.

The testimony on the part of the plaintiff tended to show an assault of a most aggravated and brutal character, and warrants were issued for the arrest of Thompson upon the charges of aggravated assault, carrying a pistol, and drawing it upon H. W. Collier, to all of which charges pleas of guilty were entered, and this suit was brought, as has been said.

At the trial from which this appeal comes the jury was properly instructed that the plaintiff was entitled to compensatory damages, regardless of the provocation which had prompted the assault, and, in addition to this charge, an instruction numbered 9 was given on the question of punitive damages, which reads as follows: "In addition to compensatory damages, the jury have a right to find, if the facts warrant such finding, for the plaintiff, damages by way of punishment, commonly known as punitive damages. If the defendant, with malice aforethought, took the plaintiff under arrest and duress, and compelled him to go to the defendant's home, and if while there, with malice aforethought and with an intent to kill the plaintiff or to do him great bodily harm, the defendant made an unjustified and unwarranted assault upon the plaintiff, and damaged and injured him, and if such assault was with malice aforethought, and if it was also for the purpose of avenging any fancied wrongs suffered or endured by the defendant, and if said injuries by the defendant to the plaintiff, if any, were the result of malice and vindictiveness, then and in that event the jury may find for the plaintiff vin-

dictive and punitive damages in a sum not to exceed that asked in the complaint.''

The jury was thus instructed to assess compensatory damages in any event, and to assess punitive damages under the conditions stated in the instruction. These instructions were correct.

The court gave, at the request of Thompson and over the objection and exception of appellant, instructions numbered 1, 8 and 9, which read as follows:

''1. The court instructs you that there are two issues involved in the trial of this case. The plaintiff brings suit to recover damages for an alleged unlawful assault. The defendant in his cross-complaint brings suit to recover damages for slander and libel on the part of the plaintiff against him. In determining the issues you will first consider whether or not the plaintiff has been damaged on account of the alleged assault made by the defendant, and, if so, the amount of damages that he is entitled to recover. If you find from the evidence that the plaintiff did utter or publish false and slanderous words about the defendant, then you should consider the damage, if any, to which the defendant is entitled to recover against the plaintiff.''

''8. The court instructs you that if you find from the evidence that the plaintiff is entitled to recover damages from the defendant on account of the assault that was made upon him, yet if you further find from the evidence that the defendant has been damaged on account of the false and slanderous statements made by the plaintiff, if any, concerning his integrity, and the assault made by plaintiff on him, then you may offset such an amount as you may think the defendant is entitled to against the amount that you may also find that plaintiff is entitled to on account of said assault.

''9. The court instructs you that if you find that the amount of damages which the defendant is entitled to recover by way of recoupment equals or exceeds the amount of damages which the plaintiff is entitled to re-

cover, if any, then in that event your verdict should be for the defendant.''

The objection made to instruction numbered 9 is not well taken. It did not tell the jury that plaintiff was not entitled to have compensation assessed in his favor in any event. In other words, while plaintiff's right to compensatory damages was not to be defeated, yet if, when such damages were added to the punitive damages, if any were allowed, the total amount of both did not exceed the damages which Thompson had sustained, there could be no recovery against Thompson, and the judgment should have been in his favor. In that event, plaintiff would be given redress by extinguishing the liability for his own wrongful act. Section 1197, C. & M. Digest, expressly so provides. It reads as follows: ''A set-off may be pleaded in any action for the recovery of money, and may be a cause of action arising either upon contract or tort.'' As this question is settled by the statute quoted, we need not consider what the law once was in this State or is now elsewhere. *Coates* v. *Milner,* 134 Ark. 311, 203 S. W. 701.

There is error, however, in instructions numbered 1 and 8, which calls for the reversal of the judgment, which will later be discussed.

Motions were made before the trial began to dismiss the cross-complaint against W. F. Collier and his daughter, Linnie D. Collier, which we think should have been sustained, but this error need not be considered, as the case was dismissed as to them before the submission of the case to the jury, and they have ceased to be parties, and no exception was saved to this ruling. That they were not proper parties will fully appear from the statement of facts which will later be made.

It appears that Thompson, who had married a sister of appellant, was in business for a number of years with W. F. Collier, his father-in-law. This business had prospered, but was dissolved, and ill-will arose over the settlement on the dissolution, which resulted in two encounters

between the Colliers and Thompson, in the last of which plaintiff Collier assaulted Thompson with a pistol, and it was this incident to which instruction numbered 8 refers. In this connection and about this time statements were made and a newspaper article was published and circulars were distributed, which, if false, were slanderous and libelous, their purport being that Thompson had swindled his partner on the dissolution of the partnership and the settlement following. Friends intervened, and a written agreement was prepared and signed, wherein it was recited that all differences of every kind had been composed and settled, and it was further agreed that no party to the contract, which was signed by all the Colliers as well as by Thompson, should thereafter indulge in any propaganda against the others.

A few days before the commission of the assault out of which this litigation arose, plaintiff met Thompson's son, a young man whose college course had not been completed, and told the young man that, while he was giving his father credit for educating him, he was, in fact, being educated on Collier money, and he told the young man that he ought to advise his mother to leave her husband. Collier denied that this conversation had occurred. Young Thompson testified that plaintiff, his uncle, after making these statements, requested him not to repeat what had been said, but, after thinking the matter over a day or two, he decided that he should tell his father, and he did so, and on the occasion of the first meeting of the father and uncle thereafter the assault occurred. The testimony shows that Thompson placed Collier under duress with a drawn pistol, and took Collier to his home, and told him he would be required to apologize to his sister, Thompson's wife, for what he had said. Thompson testified that this was all he had expected to require of Collier, but, after making a partial apology, Collier said, "You know you did it," meaning thereby to repeat, in the presence of Mrs. Thompson, the charge that Thompson had dealt dishonestly with

Mrs. Thompson's father. The testimony is conflicting as to just what was said and done at Thompson's home, but the undisputed testimony is that Thompson struck Collier with a pistol with such force that Collier was knocked senseless and seriously injured.

Sections 1195 and 1196, C. & M. Digest, provide that a counterclaim may be any cause of action in favor of the defendants, or some of them, against the plaintiffs, or some of them, and that, when it appears that a new party is necessary to a final decision upon the counterclaim, the court may permit the new party to be brought in and to reply to the counterclaim in the answer, or may direct that it be stricken out of the answer and made the subject of a separate action. But these sections of the statute created no right on the part of Thompson to sue the elder Collier and his daughter, as they were not concerned in the plaintiff's case. Moreover, any cause of action which Thompson may ever have had against them was barred by the statute of limitations, and was also compromised and settled by the agreement above referred to, which was executed in February, 1925.

It is also insisted that no testimony was admissible concerning the relations between plaintiff Collier and the defendant Thompson which occurred prior to the time within which Thompson might claim damages after the alleged slander. In other words, it is insisted that, as an action for slander is barred after one year, any testimony on that subject should have been limited to transactions which had occurred within the year. But we do not think so.

In the first place, the statement of appellant to Thompson's son, that the young man was being educated on Collier money, was not actionable *per se*. That a grandfather was educating a grandson is a thing so common that such a statement, considered by itself, is apparently innocuous. But the testimony in Thompson's behalf is to the effect that this is not the meaning appellant meant to convey, and did convey. The innuendo

was that the young man was being educated with money stolen by Thompson from the young man's grandfather, and this charge was actionable. It was therefore competent, to sustain the charge of slander, for Thompson to offer testimony showing the true import of the words employed and the meaning they were intended to convey, and it was equally necessary for him to show that the charge thus imported was false. It was competent for Thompson to prove the language employed and its innuendo and falsity by testimony concerning matters which had occurred more than one year before the statements were made.

An error common to both instructions .1 and 8 is that they do not take any account of the statute of limitations, but permit a recovery for any slander at any time, and the objection to this effect is well taken.

The case of *Missouri & North Ark. Ry. Co.* v. *Bridwell,* 178 Ark. 37, 9 S. W. (2d) 781, is decisive of this question. A headnote in that case reads as follows: "A counterclaim or set-off, unconnected with plaintiff's cause of action, is barred as a defense if the right of action thereon was barred before plaintiff's cause of action accrued; otherwise it is not barred."

This opinion is somewhat ambiguous because of the failure to make clear the fact which the court had in mind, to-wit, that the counterclaim of Bridwell was not barred at the time the cause of action in favor of the railroad company accrued, although it was barred at the time suit was brought. So therefore any cause of action which Thompson may have had at the time of the assault, which was barred by the statute of limitations, may not be interposed as a counterclaim or set-off against the plaintiff's right of action for damages for the assault; but, although this is true, Thompson has the right, in proving the innuendo of language spoken within the period of limitations, and also its falsity, to prove any essential fact, without regard to time, not as themselves constituting causes of action, but as explaining language

which is actionable, and in showing that such language was false.

In addition to the error common to both instructions 1 and 8 which we have just pointed out, instruction 8 permits a recovery to compensate the assault made on Thompson by Collier, although that cause of action had been composed and settled, and was also barred by the statute of limitations before the assault on Collier by Thompson was made.

It is earnestly insisted that it was error to permit the jury to consider the alleged slanderous remarks, although made within the period of the statute of limitations, to mitigate even the punitive damages. But we do not agree with counsel in this contention. The law of this feature of the case was stated by Mr. Justice RIDDICK, with his usual clearness, in the case of *LeLaurin* v. *Murray*, 75 Ark. 238, 87 S. W. 131, where he said:

"Now, it is a well settled rule of law that mere words never justify an assault, though, when they are such as to naturally arouse the resentment of those to whom they are addressed, they may go in mitigation of damages resulting from an assault provoked by them; but to do this they must have been uttered at the time of the assault, or so recently before that the provocation and the assault may be considered as parts of the same transaction. If sufficient time has intervened for reflection, and for reason to regain control, words, however provocative, do not in law mitigate such damages, for only provocation that is so recent as not to allow cooling time is competent to mitigate damages; and even then such mitigation extends only to exemplary damages. Damages for pecuniary losses actually sustained from a wrongful assault can never be mitigated below adequate compensation. *Ward* v. *Blackwood*, 41 Ark. 295; *Godsmith* v. *Joy*, 61 Vt. 488, 17 Atl. 1010, 4 L. R. A. 500, 15 Am. St. Rep. 923; *Prentiss* v. *Shaw*, 56 Me. 427, 96 Am. Dec. 475; *Millard* v. *Truax*, 84 Mich. 517, 47 N. W. 1100, 22 Am. St. Rep. 705; Hale on Torts, 262.

"Provocation, so recent and immediate as to induce a presumption that the violence done was committed under the immediate and continuing influence of the feelings and passions excited thereby, may be shown in mitigation of damages. *Mowry* v. *Smith,* 91 Mass. (9 Allen) 67; *Millard* v. *Truax,* 84 Mich. 517, 47 N. W. 1100, 22 Am. St. Rep. 705; 3 Cyc. 1096.

"But, as we have before stated, this provocation occurred some weeks or months before the assault, and the mere fact that the language used by LeLaurin was repeated by Peterson to Murray an hour or so before the assault does not bring it within the time, for there was but little of it that Murray had not heard before. Had LeLaurin repeated his former statement about Murray on the day of the assault, this renewal of an old slander would have been a double provocation; but he is not responsible for the fresh repetition by Peterson. 3 Cyc. 1098."

We are unable to say as a matter of law that such length of time had intervened between the narration to Thompson of the conversation between his son and appellant and the assault upon appellant that cooling time had been afforded and reason had regained control, and especially so as Thompson testified that the offensive remark imputing dishonesty was repeated just before the blow was struck. *Arnold* v. *State,* 178 Ark. 1066.

For the reasons indicated the judgment must be reversed, and upon the remand of the cause the jury will assess damages in plaintiff's favor in accordance with the rules announced in the LeLaurin case, *supra,* and will then consider and determine what damages, if any, should be awarded Thompson for the alleged slander, and will offset the one against the other, and will render a verdict in favor of the party whose damages exceeds the other, and for the amount of the excess.

KIRBY, J., concurs in the reversal.